PD-1498-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/28/2015 1:57:28 PM
Accepted 12/28/2015 2:29:38 PM
ABEL ACOSTA
CLERK

PD-1498-15

IN THE TEXAS COURT OF CRIMINAL APPEALS

AUSTIN, TEXAS

FILED IN
COURT OF CRIMINAL APPEALS

December 28, 2015

ABEL ACOSTA, CLERK

TONY ESCOBAR
Defendant - Appellant

VS.

THE STATE OF TEXAS
Plaintiff - Appellee

# Appellant's Petition for Discretionary Review

On Petition for Discretionary Review from the First Court of Appeals
No: 01-14-00593-CR

338th District Court
Cause Number: 1344348

Wayne T. Hill
Texas Bar No: 09656300
4615 Southwest Freeway, Suite 600
Houston, Texas 77027
Phone: (713) 623-8312 / Fax: (713) 626-0182
wthlaw@aol.com

Oral argument is not requested

# IDENTITY OF PARTIES AND COUNSEL

**Presiding Judge**
Honorable A. Reagan Clark
Sitting by Assignment
338th District Court
1201 Franklin, 15th Floor
Houston, Texas 77002

**Attorneys for the State**
At trial
Justin K. Wood
Julie Fletcher
Assistant District Attorneys
1201 Franklin
Houston, Texas 77002

On Appeal
Heather Hudson
Assistant District Attorney
1201 Franklin, 6th Floor
Houston, Texas 77002

**Attorneys for Appellant**

At trial
Sam Adamo
Sam Adamo, Jr.
3200 Travis, 4th Floor
Houston, Texas 77006

On Appeal
Wayne T. Hill
4615 Southwest Freeway, Suite 600
Houston, Texas 77027

**Appellant**
Tony Escobar

# TABLE OF CONTENTS

Identity of Parties and Counsel      i

Table of Contents      ii

Index of Authorities      iii

Statement Regarding Oral Argument      iv

Statement of the Case      iv

Statement of Procedural History      iv

Reasons for Granting Review      1

Summary of Appellant's Position on PDR      1

Appellant's First Claim for Review & Argument      2

Appellant's Second Claim for Review & Argument      6

Appellant's Third Claim for Review & Argument      9

Prayer for Relief      11

Certificate of Service      12

Word Count Compliance      12

Opinion from First Court of Appeals      Appendix "A"

# INDEX OF AUTHORITIES

## CONSTITUTIONS

| | |
|---|---|
| Sixth  Amendment - U.S. Constitution | 3,5 |
| Fourteenth Amendment - U.S. Constitution | 8 |

## STATUTES / RULES

| | |
|---|---|
| Texas Rules of Evidence 102 | 10 |
| Texas Rules of Evidence | 10 |
| Texas Rules of Evidence 107 | 7,8 |
| Texas Rules of Evidence 406 | 9,10,11 |
| Texas Rules of Evidence 801(e)(2)(E) | 7,8 |
| Texas Rules of Appellate Procedure 33.1 | 10 |
| Texas Rules of Appellate Procedure 44.2(a) | 5,6,8 |
| Texas Rules of Appellate Procedure 44.2(b) | 5,6,9 |

## CASELAW

| | |
|---|---|
| Anderson v. State | 10 |
| Buchanan v. State | 9 |
| Coleman v. State | 2 |
| Davis v. Alaska | 3 |
| Delaware v. Van Arsdall | 4 |
| Hammer v. State | 4 |
| Hernandez v. State | 6 |
| Holmes v. South Carolina | 8 |
| Jordan v. State | 4 |
| Keeter v. State | 11 |
| King v. State | 7 |
| Miller v. State | 10 |
| Tillman v. State | 4 |
| Vela v. State | 5 |
| Virts v. State | 3 |
| Walters v. State | 8 |

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested.

## STATEMENT OF THE CASE

Appellant was tried for capital murder in the death of Russell Lopez. The jury found Appellant guilty of capital murder as alleged in the indictment. Appellant's punishment was automatically set at life in prison.

## STATEMENT OF PROCEDURAL HISTORY

Appellant appealed to the First Court of Appeals. On October 29, 2015, the First Court of Appeals issued its Opinion affirming Appellant's conviction

A copy of the Opinion is attached as Appendix "A"

This Court granted Appellant's Motion for Extension of Time to File Petition for Discretionary Review until December 30, 2015.

## REASONS FOR GRANTING REVIEW

**1. The Court of Appeals decision conflicts with the decision of another Court of Appeals on the same issue.**

**2. The Court of Appeals has decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals or the Supreme Court of the United States.**

**3. The Court of Appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for the exercise of the power of supervision by the Court of Criminal Appeals.**

## SUMMARY OF APPELLANT'S POSITION
## ON PETITION FOR DISCRETIONARY REVIEW

Appellant brings forward several complaints concerning the Court of Appeals disposition of Points of Error raised on original submission. The complaints focus on the limitation of cross examination and the exclusion of evidence, all of which concerned the State's star witness, Amber Thornton, who was originally charged with capital murder, but later received a plea bargain deal which reduced her charge to aggravated robbery and made her eligible for probation at sentencing. As the State's star witness, it was essential that Appellant be allowed to explore all matters touching on Thornton's role as a witness.

1

## APPELLANT'S FIRST CLAIM FOR REVIEW

**IS THE SIXTH AMENDMENT RIGHT TO CROSS EXAMINE COMPROMISED WHEN THE COURT PLACES LIMITS ON THE QUESTIONING OF AN EXPERT WITNESS CONCERNING POSSIBLE INFLUENCES AND MOTIVES FOR A PROSECUTION WITNESS TO FABRICATE A STORY.**

## ARGUMENT IN SUPPORT OF APPELLANT'S CLAIM FOR REVIEW

The State of Texas prosecuted three individuals as a result of the killing of Russell Lopez. Appellant, Joseph Facundo and Amber Thornton were charged with capital murder. The State alleged that the aggravating factor which made the case a capital murder was that the killing of Lopez was done during the commission or attempted commission of the robbery of Lopez. The State of Texas made a deal with Amber Thornton to secure her testimony against Appellant. The State's reliance on Thornton was absolutely essential to its efforts to show that robbery and murder had been previously discussed and planned by the individuals, and that the plan was carried out by Appellant and Facundo.

During his cross examination of homicide investigator Clopton, Appellant asked Clopton for his professional opinion whether taking capital murder off the table and offering aggravated robbery and possible probation could influence or be a motive to fabricate a story. (R-V-12) The State's objection to speculation and relevance was sustained by the trial court. The trial court's ruling was upheld by the Court of Appeals. In **Coleman v. State, 545 SW2d 831 (Tex. Crim. App. 1977)**, this Court noted that animus, motive, or ill-will of a prosecuting witness who testifies against the defendant

2

is never a collateral or irrelevant inquiry, and the defendant may show by himself, or by others if necessary, why the witness is unfriendly toward him. The reasoning behind this rule is simply that great latitude should be allowed the accused in showing any fact which would tend to establish ill feeling, bias, motive and animus upon the part of any witness testifying against him. The right to cross examine a testifying state witness extends to any matter that could reflect on the witness's credibility. The trial judge should allow the accused great latitude to show any relevant fact that might tend to affect the witness's credibility. **Virts v. State, 739 SW2d 25 (Tex. Crim. App. 1987).** Appellant's jury was not afforded that opportunity.

The Court of Appeals held that because there was some evidence that Thornton's capital murder charge was reduced to aggravated robbery (making her eligible for probation) it sufficed to afford Appellant his **Sixth Amendment** right to cross examination. The favorable treatment afforded the trial court's ruling limiting Appellant's cross examination of Clopton is contrary to the **Sixth Amendment** which guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him. **Davis v. Alaska, 415 U.S. 308 (1974)** The **Sixth Amendment** right to confront witnesses includes the right to cross examine witnesses, to attack their general credibility or to show their possible bias, self-interest, or motives in testifying. As the Supreme Court noted in **Davis**, there is an important distinction between an attack on the general credibility of a witness and a more particular attack on the

3

credibility that reveals possible biases, prejudices, or ulterior motives of the witness as they may relate directly to the issues or personalities in the case at hand. Thus, under **Davis**, the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross examination. A defendant's **Confrontation Clause** rights are satisfied when defense counsel is permitted to expose to the jury the facts from which jurors...could appropriately draw inferences relating to the reliability of the witness. **Hammer v. State, 296 SW3d 555 (Tex. Crim. App. 2009)**

The Court of Appeals opinion cited **Delaware v. Van Arsdall, 475 U.S. 673 (1986)** for the proposition that limits can be placed on cross examination. The record will reveal that the cross examination of detective Clopton did not involve issues of harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that was repetitive or only marginally relevant, so **Arsdall** is not controlling. Clopton, a twenty-three year police veteran with nine years experience as a homicide investigator, was uniquely qualified to answer questions surrounding what could influence or motivate a prosecution witness to fabricate a story. There was no challenge by the State concerning Clopton's qualifications as an expert. **Jordan v. State, 928 SW2d 550 (Tex. Crim. App. 1996); Tillman v. State, 354 SW3d 425 (Tex. Crim. App. 2011)**. A witness is qualified to testify as an expert if the witness has sufficient background...... in a particular field that goes to the very matter on which the witness

is to give an opinion. The focus is on the "fit" between the subject matter at issue and the expert's familiarity therewith. **Vela v. State, 209 SW3d 128 (Tex. Crim. App. 2006)** The importance of Thornton's State-sponsored testimony was clear - she provided "first-hand" inside information to establish the elements of capital murder. Her testimony was used by the State to refute Appellant's position that he did not anticipate that a robbery or a killing would take place. By virtue of Thornton's importance as a State's witness, it was essential that the court not limit Appellant's **Sixth Amendment** right to cross examine Clopton as it did. The jury should have been allowed to hear what had transpired between Clopton and Thornton which could have influenced or motivated her into providing the testimony she did against Appellant. A full and fair cross examination of Clopton was essential to the jury's evaluation of Thornton and her trial testimony which differed from her previous rendition of the facts. Appellant submits that the Court of Appeals incorrectly concluded that he was not denied his **Sixth Amendment** right of cross examination.

Although the Court of Appeals' opinion upheld the limitation placed on Appellant's cross examination of Clopton, it nonetheless evaluated how the purported error was harmless. Appellant submits the Court of Appeals erred when it applied **Rule 44.2(b) TRAP** in its harm analysis. As a claim of constitutional error, the correct rule to evaluate harm was **Rule 44.2(a)** which requires that the reviewing court must reverse a judgment of conviction or punishment unless the court determines beyond a

reasonable doubt that the error did not contribute to the conviction or punishment. **Hernandez v. State, 60 SW3d 106 (Tex. Crim. App. 2001)** Appellant submits that whether the correct rule **[44.2(a)]** or the less stringent rule **[44.2(b)]** is applied, the result is the same - the limitation placed on Appellant's cross examination violated the **Sixth Amendment** and was harmful. Appellant prays this Court grant discretionary review and order the reversal of his conviction and the grant of a new trial.

## APPELLANT'S SECOND CLAIM FOR REVIEW

## THE COURT OF APPEALS ERRED WHEN IT INTERPRETED THE RULES OF EVIDENCE TO UPHOLD THE EXCLUSION OF EVIDENCE ASSAILING THE CREDIBILITY OF THE STATE'S STAR WITNESS AMBER THORNTON

## ARGUMENT IN SUPPORT OF APPELLANT'S CLAIM FOR REVIEW

Amber Thornton was the key witness for the State in its prosecution of Appellant. Thornton was called upon to support the State's proof model that Appellant was aware of what was going to happen when the trio (Amber Thornton, Joseph Facundo and Appellant) went to the home of Russell Lopez on December 20, 2011. Prior to becoming a cooperating witness for the State of Texas, Thornton had been interrogated by homicide investigator Clopton about the events leading up to and during the killing of Russell Lopez. Her testimony provided the State with evidence in support of its theory that Appellant knew that the object of their trip was to rob Lopez. She also provided direct proof that Appellant knew, or should have anticipated, that the killing of Lopez would occur. For those reasons, the admission of Thornton's pre-trial

6

statements were crucial to shed critical light on her credibility as a state witness.

The Court of Appeals held that there was no reversible error in excluding Thornton's pre-trial statements to Clopton. The Court of Appeals noted Appellant's reliance on these two Rules of Evidence, but did not specifically hold that his reliance upon them was misplaced. The Court seemed to tacitly find that the statements were not admissible pursuant to **Rule 801 (e)(2)(E)** as a statement by a co-conspirator, or pursuant to **Rule 107** - the Rule of Optional Completeness. The Court went on to essentially hold (as it did concerning other points of error) that since the jury heard Thornton's testimony acknowledging that she had previously lied to Clopton - that was sufficient to give the jury the gist of Appellant's defense.

Appellant re-urges his reliance on **King v. State, 189 SW3d 347 (Tex. Crim. App. - Fort Worth 2006, no pet.)** The nature and full extent of Thornton's denial of culpability when first speaking with Clopton was not provided to the jury. Appellant submits that it was essential to Appellant's presentation of his defense that the jury be afforded the unfiltered exchange between Thornton and Clopton in order to understand how Thornton went from claiming ignorance (with Clopton) to becoming the star witness for the State at trial.

The purpose behind the Rule of Optional Completeness is to insure that the fact-finder have the benefit of full and complete information relating to the testimony which is necessary to fully and fairly explain a matter opened up by the adverse party.

**Walters v. State, 247 SW3d 204 (Tex. Crim. App. 2007)** The jury only heard the polished version of Thornton's testimony, and was not permitted to hear what had transpired between her and homicide investigator Clopton which may have contributed to her switching her story to aid the State in its prosecution of Appellant.

The court's evidentiary rulings frustrated and prevented Appellant from presenting a full and complete defense in accordance with the Supreme Court holding in **Holmes v. South Carolina, 547 U.S. 319 (2006)**. **Holmes** and other cases stand for the proposition that whether rooted directly in the **Due Process Clause of the Fourteenth Amendment** or in the **Compulsory Process or Confrontation Clause of the Sixth Amendment**, the Constitution guarantees criminal defendant's a meaningful opportunity to present a complete defense. At best, Appellant was permitted to present a skeletal defense that did not include evidence developed by police investigators which could have shed valuable light on the transition of Amber Thornton from accused capital murderer to star witness for the State of Texas. Appellant submits that the exclusion of the evidence under either evidentiary rule **[801(e)(2)(E) or 107]** abridged his right to present a defense by infringing upon a weighty interest of the accused and the use of the rules to exclude the evidence was arbitrary or disproportionate to the purpose they were designed to serve.

In light of the constitutional implications raised by **Holmes** error, Appellant submits that any harm analysis must be performed in accordance with **Rule 44.2(a)**, not

8

**Rule 44.2(b)** of the Texas Rules of Appellate Procedure. Appellant urges this Court to grant discretionary review and ultimately reverse his conviction and order a new trial.

## APPELLANT'S THIRD CLAIM FOR REVIEW

### THE COURT OF APPEALS ERRED WHEN IT HELD THAT APPELLANT WAIVED HIS RIGHT PURSUANT TO RULE 406 OF THE RULES OF EVIDENCE TO COMPLAIN ABOUT THE EXCLUSION OF EVIDENCE ESTABLISHING THE STATE'S STAR WITNESS HAD A HABIT OF LYING TO POLICE

### ARGUMENT IN SUPPORT OF APPELLANT'S CLAIM FOR REVIEW

The State's star witness, Amber Thornton, was no stranger to the police. In fact, Thornton had been subjected to police interrogation before. Appellant proffered evidence establishing that Thornton had lied to the police in the course of that investigation as well. As noted in his brief on original submission to the Court of Appeals, Appellant was prohibited from introducing this evidence for the jury's consideration.

On direct appeal, the Court of Appeals held that Appellant waived his right to complain about Amber Thornton's habit of lying to police because he did not specifically lodge a **Rule 406** objection at trial. The Court of Appeals cited **Buchanan v. State, 207 SW3d 772 (Tex. Crim. App. 2006)** as authority for its holding. Appellant submits that the Court of Appeals misapplied **Buchanan**, by not finding that the legal basis for the admission of the evidence should have been obvious to the trial court and the prosecuting attorney. The exclusion of this evidence prevented the jury from evaluating Thornton's credibility which was paramount, given her role as the State's star

9

witness against Appellant. While the jury was apprised of Thornton's lying to homicide investigator Clopton in the instant case, it did not have the benefit of knowing that Thornton had done precisely the same thing when previously confronted by the police in another investigation.

**Rule 102 of the Rules of Evidence** provides that the rules should be construed so as to administer every proceeding fairly; eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination. **Rule 103 TRE**, as well as **Rule 33.1 of the Rules of Appellate Procedure**, set forth the rules for error preservation - with a unique exception for those instances where the specific grounds for the complaint were apparent from the context.

**Rule 406 of the Rules of Evidence** provides that evidence of a person's habit...... may be admitted to prove that on a particular occasion the person..... acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there is an eyewitness. In order for the proponent to offer evidence of habit, the proponent must at least demonstrate a regular practice of meeting a particular kind of situation with a specific kind of conduct. **Anderson v. State, 15 SW3d 177 (Tex. App. - Texarkana 2000, no pet.) Rule 406** mandates that evidence of habit is relevant to prove that the conduct of the person or accused on a particular occasion was in conformity with the habit. **Miller v. State, 882**

**SW2d 936 (Tex. App. - Beaumont 1994)**. This is what occurred in the instant case - when she was confronted with police interrogation, Thornton's default position (habit) was to lie to investigators.

Even though Appellant did not specifically articulate his reliance on **Rule 406,** it was evident from the record that he sought to introduce how Thornton typically interacted with law enforcement when confronted by them. This Court has stated in the past that "we should avoid splitting hairs when determining whether a claim has been procedurally defaulted". **Keeter v. State, 175 SW3d 756 ( Tex. Crim. App. 2005).** Appellant submits that the legal reason behind seeking admission of this evidence was obvious to the trial court and opposing counsel, and thus, the complaint was sufficiently preserved for appeal. Appellant prays this Court grant discretionary review and enter an order consistent with the issue raised herein.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellant prays that the Honorable Court consider the issues raised herein and grant discretionary review, or such other relief, including remand to the Court of Appeals for consideration of issues as this Court deems appropriate.

11

Respectfully submitted

*Wayne T. Hill*

Wayne T. Hill
SBOT: 09656300
4615 Southwest Freeway, Suite 600
Houston, Texas 77027
Tel: (713) 623-8312
Fax: (713) 626-0182

Attorney for Tony Escobar

## CERTIFICATE OF SERVICE & WORD COUNT COMPLIANCE

On this 28th day of December, 2015, I hereby certify that a true and correct copy

of this Petition for Discretionary Review has been mailed to the Harris County District

Attorney's Office and the State Prosecuting Attorney.

This Petition complies with Rule 9. 4 of the Texas Rules of Appellate Procedure

containing 2826 words based on the computer generated program used to prepare this

document.

*Wayne T. Hill*

Wayne T. Hill

12

APPENDIX "A"

Memorandum Opinion

In the Court of Appeals
for the
First District Of Texas

Tony Escobar v. State of Texas
No: 01-14-00593-CR

Opinion issued October 29, 2015

Opinion issued October 29, 2015.



In The

# Court of Appeals

For The

## First District of Texas

_____

NO. 01-14-00593-CR
_____

**TONY ESCOBAR, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Case No. 1344348**

---

## MEMORANDUM OPINION

A jury convicted appellant, Tony Escobar, of capital murder, and, because the State did not seek the death penalty, the trial court assessed punishment at confinement for life. We affirm.

## BACKGROUND

On the evening of December 20, 2011, Russell Lopez was at home taking care of his seven-year-old son, Caden, his six-year old niece, Bailey, and his nine-month-old daughter, Julianne. Lopez's wife, Marie, and his cousin, Shonte Mabe, were at work together. When they got off work shortly after 9:00 that night, Marie tried calling Lopez twice, but was unable to reach him. Mabe gave Marie a ride home. When they pulled up to Marie's house, they noticed that Lopez's black Tahoe was not in the driveway.

Upon entering the home, they found that their house had been ransacked and Marie's nine-month-old daughter was sitting on the couch unattended. Lopez was found lying on the bedroom floor covered in blood. While Mabe called 911, Marie went to Caden's bedroom to check on the children. Marie found the children in Caden's bedroom. Both Caden and Bailey were unharmed, but their hands and feet had been bound together with Julianne's baby clothes. While Marie was in the children's bedroom, the 911 dispatch operator instructed Mabe to confirm that Lopez was not breathing. Lopez's face was so distorted that he was unrecognizable. Due to the severe nature of the injuries to Lopez's face, Mabe was unable to perform CPR.

Paramedics arrived and declared Lopez dead on the scene. A sword was laying across his left chest and arm. There was a large concentration of blood on

2

the floor of the dining room area, as well as bloody trails on the carpet leading to Lopez's body, indicating that his body had been dragged from the dining room to the bedroom. Various items had been removed from the home, including a television, a game system, jewelry, and Lopez's vehicle.

On December 22, Lopez's missing Tahoe was found partially submerged in a large body of water within a wooded area near Katy. The part of the vehicle that had not been submerged had been burned. Inside the vehicle, crime scene investigators with the Harris County Sheriff's Office recovered a cell phone, a shotgun shell, and a lighter.

Sergeant Craig Clopton spoke with people in the neighborhood and developed two potential suspects, Amber Thornton and Joseph Facundo. On December 28th, Clopton interviewed Thornton, who consented voluntarily to the interview, at the homicide department. Based on information he received from Thornton, Clopton also developed appellant as a suspect.

Clopton produced photo arrays containing pictures of the three suspects and showed them to Caden. Caden identified Thornton, Facundo, and appellant. Clopton then sought capital murder charges against appellant, and an arrest warrant was issued for his arrest.

On December 30th, appellant and Facundo were apprehended in Laredo, where they were attempting to cross the border into Mexico.

## A. *Appellant's Trial*

At appellant's trial, Thornton testified as a witness for the State. According to Thornton, Lopez was the neighborhood drug dealer. On the evening of December 20, 2011, Thornton went to the vacant house next door to her home to get high. She found that Facundo and appellant were already at the vacant house smoking marihuana. Thornton testified that they spent the next 20 to 30 minutes discussing a plan to rob Lopez to get money and drugs. They planned to enter Lopez's home under the pretense of selling him a laptop, which appellant had brought to the vacant house, in exchange for three bags of cocaine worth $20.00 each. Once inside, Facundo would hit Lopez over the head with a hammer, appellant would tie up the children, and they would steal Lopez's property and his Tahoe.

Facundo called Lopez and arranged for the "sale" of the laptop. Then they walked to Lopez's house, and he let them inside. Facundo was carrying the hammer in his pocket. Thorton testified that Lopez was sitting at the dining room table feeding his infant daughter. Caden and Bailey were also present, but Lopez told them to go to the back room. Appellant set the laptop on the table and grabbed the cocaine. Then Facundo pulled the hammer out of his pocket and struck Lopez in the back of the head. Lopez fell to the ground, and Facundo continued to repeatedly strike him with the hammer.

4

Thornton testified that the baby began crying, so she picked her up from the highchair and held her while appellant went to Caden's room and tied up the other children. Facundo started grabbing televisions, guns, laptops, drugs, and money. Appellant and Facundo loaded the stolen items into the appellant's Tahoe, while Thornton held the baby. Appellant and Facundo grabbed Lopez by the hands and dragged his body into the bedroom. Then, Facundo retrieved an ornamental sword from Lopez's bedroom. Facundo and appellant were standing over Lopez's body, and Facundo was about to stab Lopez with the sword when he told Thornton to look the other way. Thornton testified that she did not watch what happened in the bedroom; instead, she walked over to the couch and set the baby down.

Then they drove the Tahoe to the vacant house and hid the stolen property in the attic. Facundo told Thornton that he and appellant discarded the Tahoe at a lake known locally as "The Cliffs." Thornton testified that she sold some of the jewelry that she had stolen from Lopez's house. Thornton, Facundo, and appellant also took a safe stolen from the Lopez's home to a neighborhood friend named David Tillman. Tillman managed to open the safe, but they only found legal papers inside. Tillman later provided the stolen safe to Sergeant Clopton.

Roger Milton, Jr., Assistant Medical Examiner for Harris County, testified regarding Lopez's autopsy results. Milton explained that Lopez had extensive blunt and sharp force injuries primarily of his head and neck region and some on the

5

front of his chest. Milton also observed the presence of two narrow objects penetrating into the soft tissue in what he referred to as potentially chop injuries. The injuries to complainant's face were extensive and very destructive with fractures. Milton also observed perforating wounds on Lopez's body, including a stab wound to the right upper chest that went through his lung. Milton testified that a sword shown to him (State's exhibit No. 94) was capable of inflicting the type of injuries sustained by the complainant. He indicated that there was very little hemorrhage along the wound track indicating that the injury was consistent with either a peri-mortem (around the time of death) or even postmortem injury. Milton opined that the complainant's cause of death was multiple blunt and sharp force injuries of the head, neck, and chest. He determined that the manner of death was homicide.

Lopez's son, Caden, testified that on the evening of December 20, 2011, he saw his father sitting at the kitchen table feeding his sister Julianne, and there were two men standing behind him. His father told him to go back to his room. Approximately 10 minutes later, a man entered his room carrying Julianne's baby clothes and said "we're going to play cops and robbers." The man used the baby clothes to tie his legs together and to tie his hands behind his back. The man also tied up his cousin, Bailey. Then the man said "If I hear a noise, I'm going to bring a dog in here." After the man left, Caden cracked the bedroom door open and saw

6

the two men and woman rummaging around in the kitchen. Caden estimated that he waited approximately 30 minutes before his mother came home from work and found him.

The following day, Caden was taken to the Children's Assessment Center to be interviewed. Sergeant Clopton showed him pictures and asked him to identify the people that were in his home that night. Caden circled appellant's photograph and identified him as the man that tied him up. Caden also made an in-court identification of appellant.

The jury found appellant guilty of capital murder as charged in the indictment.

## B. Issues on Appeal

Appellant brings the following twelve issues on appeal:

1.    The evidence is insufficient as a matter of law to sustain the jury's verdict finding the appellant guilty of capital murder beyond a reasonable doubt.

2.    The trial court erred when it denied appellant's motion for instructed verdict of not guilty at the end of the State's case.

3.    The trial court erred when it admitted the 911 tape into evidence over appellant's objection.

4.    The trial court erred when it admitted numerous autopsy photographs into evidence over appellant's objections.

5.    The trial court erred when it limited appellant's cross examination of Sergeant Clopton regarding influences and motives to fabricate a story.

7

6.  The trial court erred when it refused to allow appellant to establish what questions Sergeant Clopton asked Amber Thornton during her interview with him on December 28, 2011.

7.  The trial court erred when it refused to allow appellant to introduce Amber Thornton's statement to Sergeant Clopton in evidence pursuant to rule 801(E)(1)(E) of the Texas Rules of Evidence.

8.  The trial court erred when it refused to admit Amber Thornton's statement to Sergeant Clopton under the Rule of Optional Completeness.

9.  The trial court erred when it prevented appellant from cross examining Amber Thornton about her habit and routine lying to law enforcement to avoid responsibility for her actions.

10. The trial court erred when it refused appellant's requested jury instruction on necessity.

11. The trial court erred when it refused appellant's request for a jury instruction on the lesser offense of theft.

12. The trial court erred when it commented on the weight of the evidence in the instructions given to the jury concerning the law of conspiracy.

## SUFFICIENCY OF THE EVIDENCE

In his first two points, appellant challenges the sufficiency of the evidence to support his capital murder conviction.

### A.  *Standard of Review and Applicable Law*

A person commits capital murder "if the person commits murder as defined under Section 19.02 (b)(1)" i.e., intentionally or knowingly causing the death of an individual, and "the person intentionally commits the murder in the course of committing or attempting to commit . . . robbery." TEX. PENAL CODE ANN. § 19.03

8

(West 2011). A defendant who did not actually cause the death of the victim can nonetheless be convicted of capital murder under section 7.02 of the Texas Penal Code, which provides:

(a) A person is criminally responsible for an offense committed by the conduct of another if:

(1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or

(3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.

(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

TEX. PENAL CODE ANN. § 7.02 (West 2011).

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979);

9

*Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding that *Jackson* standard is only standard to use when determining sufficiency of evidence).

The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *see also Henderson v. State*, 29 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (stating jury can choose to disbelieve witness even when witness's testimony is uncontradicted). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the jury's determinations of credibility. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

### B.  *Analysis*

Appellant claims that the evidence is insufficient to corroborate the accomplice-witness testimony as required by Article 38.14 of the Code of Criminal Procedure, which provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2013). To measure the sufficiency of non-accomplice evidence, the reviewing court disregards the accomplice-witness testimony and then examines the remaining portions of the record to see whether there is any evidence that tends to connect the accused with the commission of the crime. *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007). "The corroborating evidence need not be sufficient by itself to establish guilt; there simply needs to be 'other' evidence 'tending to connect' the defendant to the offense." *Id.* The mere presence of the accused in the company of the accomplice during the commission of the offense is alone insufficient to corroborate the accomplice-witness testimony; however, the presence of the accused combined with other suspicious circumstances may tend to connect the accused to the offense. *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996). "Even apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration." *Id.*

11

The record contains sufficient non-accomplice evidence connecting appellant to the commission of the offense. Appellant was arrested while attempting to flee with Facundo to the Mexico. Appellant's flight raises an inference of guilt. *See Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994). Once arrested, appellant made several incriminating statements to the police. He admitted that he was present during the offense, and that he tied up the children. Appellant also admitted that he stole knives and a television set from the complainant's house and hid the stolen property in the vacant house. Appellant admitted that he drove the complainant's car to "the Cliffs" and pushed the car into the water. And, appellant told police that he stuffed his shirt in the gas tank and set the car on fire. Appellant's admissions were consistent with non-accomplice testimony that the complainant's vehicle was found partially submerged and the rear end of the vehicle had been burned. Appellant also admitted that he received approximately $1,000 as his share of the profits.

Caden's testimony also places appellant at the scene and establishes that appellant bound his hands and feet together and threatened him if he made any noise.

Finally, a DNA mixture of two or more individuals was obtained from the scabbard of the sword used to stab the complainant, and appellant could not be

12

excluded as a possible contributor to that mixture. This non-accomplice evidence is sufficient to corroborate the accomplice-witness testimony.

Appellant also argues that the evidence was insufficient to support his conviction for Capital Murder individually or as a party according to section 7.02(a)(2) of the Penal Code. TEX. PENAL CODE § 7.02(a)(2) (West 2011) ("A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense."). He contends he did not intend to promote or assist Joseph Facundo and/or Amber Thornton in the murder of the Complainant.

Appellant further argues that he could not have anticipated that Facundo would murder Russell Lopez. Appellant argues there is no evidence in the record to establish that appellant, (1) conspired to commit a felony offense with either Joseph Facundo and/or Amber Thornton or (2) that he should have anticipated Lopez's murder as a consequence of proceeding with Facundo and Thornton. Article 38.14 of the Texas Code of Criminal Procedure provides that a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

In response, the State contends that the evidence "is sufficient to support appellant's conviction as a party to the offense." It argues that appellant's "participation in the events occurring before, during, and after the commission of the offense clearly reflects a common understanding and design to murder and rob the complainant." It points to testimony by Amber Thornton asserting that she had formed a prior agreement with appellant and Joseph Facundo to rob and murder the complainant.

The State also argues that appellant did not attempt to leave the scene or contact police when Facundo began striking complainant with a hammer. Instead, appellant went to the children's bedroom and bound the children's hands and feet together. Then, he helped the co-defendant drag the complainant's body into the bedroom, rummaged through the complainant's house, stole from the deceased complainant, received an equal share of the profits, and attempted to flee to Mexico with Facundo. Accordingly, the State argues "a rational trier of fact could have concluded beyond a reasonable doubt that appellant was a willing participant in a conspiracy to rob the complainant." We agree.

To convict appellant for capital murder as a co-conspirator, the State had to prove (1) appellant was a party to a conspiracy to commit aggravated robbery, (2) capital murder was committed by appellant or someone acting with him, (3) the capital murder was committed in furtherance of the conspiracy to commit

14

aggravated robbery, and (4) appellant should have anticipated that capital murder could occur as a result of the aggravated robbery. *E.g.*, TEX. PENAL CODE ANN. § 7.02(b); *Hartsfield v. State*, 305 S.W.3d 859, 869 (Tex. App.—Texarkana 2010, pet. ref'd). The State "does not have to prove that the accused intended to shoot or kill the victim or intended that the victim be shot, as long as the evidence established he conspired to commit the robbery and that he 'should have' anticipated the murder as a result of carrying out the conspiracy to commit the robbery." *Davis v. State*, 276 S.W.3d 491, 495 (Tex. App.—Waco 2008, pet. ref'd).

### 1. Evidence of conspiracy to commit aggravated robbery

The Texas Penal Code defines robbery as: in the course of committing theft, and with the intent to obtain or maintain control of the property, a defendant intentionaly, knowingly or recklessly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a) (West 2011); *Sholars v. State*, 312 S.W.3d 694, 703 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Aggravated robbery is robbery that causes serious bodily injury to another, or is committed while using or exhibiting a deadly weapon. TEX. PENAL CODE ANN. § 29.03 (West 2011).

The jury was instructed that conspiracy means "an agreement between two or more persons with intent that they, or one or more of them, engage in conduct that would constitute the offense." TEX. PENAL CODE ANN. § 15.02(a) (West 2011); *Hooper v. State*, 255 S.W.3d 262, 265-66 (Tex. App.—Waco 2008, pet. ref'd). The court may look to events occurring before, during, and after the commission of the offense as evidenced of criminal responsibility under the law of parties. *Ervin v. State*, 333 S.W.3d 187, 201 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) ("Since an agreement between parties to act together in common design can seldom be proven by words, the State often must rely on the actions of the parties, shown by direct or circumstantial evidence, to establish an understanding or a common design to commit the offense.").

There is evidence of such an agreement among appellant, Amber Thornton, and Joseph Facundo to commit aggravated robbery in this case. The State introduced testimony from Amber Thornton that she had formed a prior agreement with appellant and Joseph Facundo to rob and murder the complainant. Thornton testified that she met with appellant and Facundo at a vacant house and spent roughly half an hour concocting a plan to gain entry to the complainant's home under the pretense of selling him a laptop. Once inside, Facundo would strike the complainant in the head with a hammer, appellant would tie up the children, and

16

they would steal the complainant's property. Thornton also testified that they also had a plan to sell the stolen property afterwards.

Thornton's testimony establishes that appellant contributed to the execution of their plan in several ways: (1) he accompanied Thornton and Facundo to the Lopez's house; (2) he provided the laptop and sold it to Lopez for cocaine; (3) he tied up the children when Facundo began striking Lopez with the hammer; (4) he helped Facundo drag Lopez's body into the bedroom; (5) he loaded Lopez's property in to the Tahoe; (6) he helped transport the stolen property to the attic of a vacant house; and (7) he and Thornton later retrieved a stolen safe from the attic and took it to David Tillman who opened the safe.

### 2. *Evidence that capital murder was committed by a co-conspirator*

The State was required to prove that the capital murder was committed by appellant or someone acting with him. Appellant stated that Joseph Facundo killed Russell Lopez, and does not dispute that on appeal.

### 3. *Evidence that Russell Lopez was killed in furtherance of conspiracy*

Testimony from Amber Thornton stated that Facundo, appellant, and she made an agreement prior to going to Lopez's house, to rob and murder Lopez. Thornton also testified that the plan was for appellant to bring a laptop to sell, and for Facundo to hit Lopez with a hammer and then rob the house. Appellant's actions were consistent with Thornton's account of a planned robbery. There is no

17

evidence that appellant attempted to leave the scene or contact police. Instead, appellant immediately went to Caden's bedroom and bound the children's hands and feet together. Then, he helped his co-defendant drag Lopez's body into the bedroom, rummaged through Lopez's house, stole from the deceased Lopez, received an equal share of the profits, and attempted to flee to Mexico with Facundo. There is sufficient evidence for the jury to conclude that Lopez was killed in furtherance of the conspiracy to commit aggravated robbery.

*4.    Evidence that appellant should have anticipated capital murder*

Testimony from Thornton showed that appellant was aware that Facundo intended to strike the complainant in the head with a hammer that he was carrying in his pocket. It is reasonably foreseeable that a person might die as a result of being struck in the head with a hammer. Furthermore, the fact that appellant continued to remain at the scene and did not protest when the complainant was repeatedly struck with a hammer and stabbed with a sword shows his acquiescence in the actions that caused Lopez's death. Viewing the evidence in the light most favorable to the jury's verdict, a rational trier of fact could have found beyond a reasonable doubt that appellant was criminally responsible as a party to the capital murder.

We overrule points of error one and two.

# RULE 401 & 403 OBJECTIONS

In point of error three, appellant claims that the trial court erred in admitting the 911 tape. In point of error four, appellant contends that the trial court erred in admitting numerous autopsy photographs.

## A. *Standard of Review and Applicable Law*

Evidence is relevant if (1) it has any tendency to make a fact more or less probable that it would be without the evidence; and (2) the fact is of consequence in determining the action. TEX. R. APP. P. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence. TEX. R. EVID. 403.

An abuse of discretion standard is applied to a trial court's decision to admit or exclude evidence. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). Likewise, in reviewing the trial court's determination of the probative and prejudicial value of evidence under rule 403, we will reverse the trial court only upon a showing of a clear abuse of discretion. *Rachal v. State*, 917 S.W.2d 799, 808 (Tex. Crim. App. 1996). But, reviewing for abuse of discretion in this context requires more than deciding that the trial judge did in fact conduct the required balancing between probative and prejudicial values; the trial court's determination must be reasonable in view of all relevant facts. *Id.* Accordingly, if the record

19

reveals that the probative value of the tendered evidence is substantially outweighed by unfair prejudice, then the trial court acted irrationally in admitting it and abused discretion. *Id.*

## B. Analysis

### 1. 911 Tape

Appellant argues that the 911 tape was not relevant because the State had ample other evidence concerning the discovery of the body and the police coming out to the scene, and that, in light of that other evidence, the evidence contained on the 911 tape was redundant and irrelevant.

911 tapes are generally admissible under Rules 401 and 403, even if not necessary to establish a material fact, because they provide a framework within which the State's evidence may be developed. *Webb v. State*, 760 S.W.2d 263, 276 (Tex. Crim. App. 1988) (holding 911 tape admissible over rule 403 objection, even though not establishing material facts, because tape provides framework for developing evidence); *Sierra v. State*, 157 S.W.3d 52, 63 (Tex. App.—Fort Worth 2004, aff'd, 218 S.W.3d 85 (Tex. Crim. App. 2007) (911 tape admissible over rule 403 objection); *Munoz v. State*, 932 S.W.2d 242, 244 (Tex. App.—Texarkana 1996, no pet.); *Brooks v. State*, 833 S.W.2d 302, 304 (Tex. App.—Fort Worth 1992, pet. ref'd).

20

In *Yi v. State*, No. 01-05-01147-CR, 2007 WL 2052064, at *4 (Tex. App.—Houston [1st Dist.] July 19, 2007, no pet.) (mem. op.), this Court concluded that the trial court did not abuse its discretion in admitting the 911 tape of 11-year-old boy crying and praying as he discovered his mother's blood-soaked body because the tape offered a framework for the State's case.

Similarly, the 911 tape in this case was made immediately after Amanda Mabe and Marie Lopez discovered Russell Lopez's body and corroborates their testimony. The tape is relevant because it provides "a framework" for the State's evidence, and its relevance is not "substantially outweighed" by the danger of unfair prejudice toward the defendant. Accordingly, the trial court did not abuse its discretion in admitting the 911 tape over appellant's 401 and 403 objections.

We overrule point of error three.

*2. Autopsy Photographs*

Appellant also argues that the trial court abused its discretion in admitting autopsy photographs into evidence. Appellant contends that State's exhibits 79-93 are irrelevant because the cause of complainant's death was not a contested issue at trial. Appellant also argues that the probative value of the photographs was substantially outweighed by the danger of unfair prejudice.

The trial court's decision to admit photographs into evidence is reviewed for an abuse of discretion. *Penry v. State*, 903 S.W. 2d 715, 751 (Tex. Crim. App.

21

1995). A photograph is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* TEX. R. EVID. 401. "The identity of the victim and the manner and means of death are certainly facts that are of consequence to the determination of the action." *Penry*, 903 S.W.2d at 751 (*citing Long v. State*, 823 S.W.2d 259, 271 n.18 (Tex. Crim. App. 1991)). Thus, autopsy photographs that are helpful in demonstrating the cause of death are admissible even if the cause of death is not contested. *See Flores v. State*, 299 S.W.3d 843, 858 (Tex. App.—El Paso 2009, pet. ref'd) (holding that photographic evidence was admissible even if it merely corroborated other evidence). Overall, the photograph must be helpful to the jury: "If there are elements of a photograph that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the emotional and prejudicial aspects substantially outweigh the helpful aspects." *Erazo v. State*, 144 S.W.3d 487, 491–92 (Tex. Crim. App. 2004).

Here, the indictment charged appellant with causing the death of Lopez by striking him with a hammer or stabbing him with a sword. The 15 autopsy photographs introduced at trial were selected by the prosecutor and the medical examiner from more than 250 photographs taken of the complainant's injuries. The medical examiner testified that the autopsy photographs of Lopez's injuries were

22

relevant to show the cause of death. The photographic evidence of the complainant's injuries was relevant because it supported the State's theory that Lopez was struck in the back of the head with a hammer and suffered repeated blows from a hammer and a sword.

Appellant further contends that, even if the photographs are relevant, they are overly prejudicial. Under the Rule of Evidence 403, the trial court must determine whether the probative value of the photographic evidence is substantially outweighed by the danger of unfair prejudice. TEX R. EVID. 403. To make this determination, the court assesses various factors such as whether the photographs are gruesome, their detail, their size, whether they are black and white or color photographs, whether the body is naked or clothed, and whether the body has been altered in some way that enhances the gruesomeness of the photograph. *Flores v. State*, 299 S.W.3d 843, 858 (Tex. App.—El Paso 2009, pet. ref'd). Although the autopsy photographs are gruesome, the trial court admitted only those photographs that the medical examiner testified were probative of the manner and method of the Lopez's death. Accordingly, appellant has not demonstrated that the trial court abused its discretion by admitting the photographic evidence.

We overrule point of error four.

23

## CROSS EXAMINATION

In the fifth point of error, appellant claims that the trial court erred by limiting his cross-examination of Sergeant Clopton, which was designed to cast doubt upon the anticipated testimony of the State's principal witness, Amber Thornton. The prohibited line of questioning included the following:

> [Defense Counsel]: As an experienced homicide investigator would you agree that taking capital murder off the table and offering aggravated robbery and possible probation could influence or be a motive to fabricate a story?
>
> [Prosecutor]: Objection. Speculation and relevance.
>
> [Defense Counsel]: I think he's qualified as an expert to testify as an experienced homicide investigator.
>
> [Prosecutor]: Speculation as to what motivation it might have to another person.
>
> [Trial Court]: Sustained.

### A. Standard of Review and Applicable Law

We review a trial court's decision to exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). A trial court does not abuse its discretion if any evidence supports its decision. *See Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002). We will uphold the trial court's evidentiary ruling if it

24

was correct on any theory of law applicable to the case. *See De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

The Sixth Amendment right to confront witnesses "includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying." *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). Generally, the Texas Rules of Evidence permit a defendant to "cross-examine a witness for his purported bias, interest, and motive without undue limitation or arbitrary prohibition." *Id.* at 563; *see also* TEX. R. EVID. 613(b) (providing for impeachment of witness by evidence of alleged bias or interest in favor or against party); *Billodeau v. State*, 277 S.W.3d 34, 42–43 (Tex. Crim. App. 2009). ("The possible animus, motive, or ill will of a prosecution witness who testified against the defendant is never a collateral or irrelevant inquiry, and the defendant is entitled, subject to reasonable restrictions, to show any relevant fact that might tend to establish ill feeling, bias, motive, interest, or animus on the part of any witness testifying against him."); *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998) ("Exposing a witness' motivation to testify for or against the accused or the State is a proper and important purpose of cross-examination.") The scope of permissible cross-examination is "necessarily broad." *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). "A

25

defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias, or interest for the witness to testify." *Id.*

This broad scope of cross-examination does not mean, however, "that a defendant can explore every possible line of inquiry." *Smith v. State*, 352 S.W.3d 55, 64 (Tex. App.—Fort Worth 2011, no pet.) "[T]rial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986); *see also Hammer*, 296 S.W.3d at 561 ("This right is not unqualified, however, the trial judge has wide discretion in limiting the scope and extent of cross-examination.").

**B.    Analysis**

Even if we were to agree that the trial court erred in excluding Clopton's testimony about the effect of a plea deal on the witness, we would nonetheless conclude that the error was harmless. The reviewing court must disregard any non-constitutional error which does not affect appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b). Substantial rights are not affected by the erroneous exclusion of evidence if, after considering the record as a whole, the reviewing court "has fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

26

Appellant claims that the prohibited line of cross-examination was necessary to undermine Thornton's credibility by showing that she had a motivation to lie in exchange for a reduced charge. However, the State presented testimony from Thornton acknowledging that she had initially been charged with capital murder, which posed a potential penalty of death or life without the possibility of parole. Thornton admitted that the original charge of capital murder was later reduced to a charge of aggravated robbery in exchange for her testimony against appellant and Facundo. On cross-examination, Thornton further testified that she had pleaded guilty to aggravated robbery, making her potentially eligible to receive probation after testifying against both co-defendants. Thus, the jury could have believed that the reduced charge could affect Thornton's credibility, even without expert opinion testimony from Sergeant Clopton.

We overrule point of error five.

## EXCLUSION OF EVIDENCE

In three points of error—six, seven, and eight—appellant complains that the trial court erroneously excluded evidence of the questions Sergeant Clopton asked Amber Thornton during his initial interrogation of her on December 28, 2011. Appellant also argues that Thornton's statement should have been admitted under the Rule of Evidence 801(e)(2)(E) as a statement by a co-conspirator during the

course and in furtherance of the conspiracy and under the Rule of Optional Completeness.

## A.    *Standard of Review*

Rule 801(e)(2)(E) of the Texas Rules of Evidence allows the introduction of a conspirator's statement if made during and in furtherance of the conspiracy. The rationale for this rule is based on the concept that "a conspiracy is a common undertaking where the conspirators are all agents of each other and where the acts and statements of one can be attributed to all." *Byrd v. State*, 187 S.W.3d 436, 440 (Tex. Crim. App. 2005) (*quoting Bourjaily v. United States*, 483 U.S. 171, 188–94 (1987)). Consequently, the conspirators are imbued with a degree of trustworthiness in light of their lack of incentive to mischaracterize the actions of their co-conspirators. *Id.* Statements made by a conspirator after the conspiracy has come to a conclusion are not exempt from the hearsay rule. *Id.* (*citing Krulewitch v. United States*, 336 U.S. 440, 441–42 (1949)); *Deeb v. State*, 815 S.W.2d 692, 696 (Tex. Crim. App. 1991).

The Rule of Optional Completeness provides that:

> [w]hen part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between the same parties may be given.

28

TEX. R. EVID. 107 (since amended).

This rule is an exception to the hearsay rule and permits the introduction of otherwise inadmissible evidence when necessary to fully and fairly explain a matter "opened up" by the adverse party. *Walters v. State*, 247 S.W.3d 204, 218 (Tex. Crim. App. 2007). The purpose of the rule "is to reduce the possibility of the jury's receiving a false impression from hearing only a part of some act, conversation, or writing." *Tovar v. State*, 221 S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2006, no pet.). The rule is not implicated until a party attempts to have a portion of the recorded statement "given in evidence." *Sauceda v. State*, 129 S.W.3d 116, 122 (Tex. Crim. App. 2004) (quoting TEX. R. EVID. 107).

## B.    *Analysis*

In the instant case, appellant contends that Thornton's statement was in furtherance of the conspiracy because she was attempting to prevent the police from learning of the existence of the conspiracy. Appellant cites to *King v. State*, 189 S.W.3d 347 (Tex. App.—Fort Worth 2006, no pet.), in which statements made in an effort to conceal evidence that would incriminate the co-conspirators for murder was admissible because the statements benefitted the conspiracy. Appellant also contends that, when Thornton gave testimony that was at odds with her statement made to Clopton, the jury was entitled to the benefit of the whole of her statement under the Rule of Optional Completeness. Appellant states that the

29

jury was deprived of the full flavor of the exchange taking place between Sergeant Clopton and Thornton on December 28, 2011, and that the trial court's rulings prevented appellant from presenting a full and complete defense because "the jury should have been afforded the opportunity to understand how Thornton went from claiming ignorance (with Clopton) to becoming the star witness for the State at trial."

However, error, if any in refusing to admit Thornton's statement under any of the asserted grounds is harmless. Exclusions of evidence are unconstitutional only if they "significantly undermine fundamental elements of the accused's defense." *Potier v. State*, 68 S.W.3d 657, 666 (Tex. 2002) (citing *United States v. Scheffer*, 523 U.S. 303, 315, 118 S. Ct. 1261 (1998)). That the defendant was unable to present his case to the extent and in the form he desired is not prejudicial where, as here, he was not prevented from presenting the substance of his defense to the jury. *Id.*

When Thornton testified, she candidly admitted on both direct and cross-examination that she had been dishonest when she initially told Sergeant Clopton that there was no plan to rob or murder the complainant. The State's questions did not leave a false impression with the jury, and the introduction of the statement was not necessary for the jury to fully understand that Thornton had previously lied to the police about her involvement in a plan to rob and murder Lopez. The jury

was also made aware that Thornton had pleaded guilty to a reduced charge after she agreed to testify against her co-defendants. As such, exclusion of the further evidence regarding Thornton's statements to police did not affect appellant's "substantial right," as he was able to make the jury aware of Thornton's inconsistent statements and the fact that she received a reduced charge. *See id.*; TEX. R. EVID. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ."); TEX. R. APP. P. 44.2(b) ("Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

We overrule points of error six, seven, and eight.

## EXLUSION OF EVIDENCE OF HABIT AND ROUTINE

In point of error nine, appellant contents the trial court erred by refusing to permit cross-examination of Amber Thornton regarding a prior incident involving lying to the police. At trial, defense counsel attempted to ask Thornton about whether she had lied to police on other occasions. The State objected that defense counsel was improperly trying to impeach Thornton with specific acts of misconduct. The trial court sustained the objection.

On appeal, appellant contends that the evidence should have been admissible as evidence of habit under Texas Rule of Evidence 406, which provides:

> Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or

31

organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.

TEX. R. EVID. 406.

To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a)(1); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). A general or imprecise request suffices to preserve error only if the legal basis for the request is obvious to the court and to opposing counsel. *See Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006). The point of error raised on appeal must comport with the request made at trial. *See Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014); *Clark*, 365 S.W.3d at 339. Failure to properly object or make a request at trial may waive even constitutional errors. *See Yazdchi*, 428 S.W.3d at 844; *Clark*, 365 S.W.3d at 339.

At trial, appellant never invoked rule 406 or argued that the evidence was admissible as evidence of habit. Thus, appellant has waived the right to raise this complaint on appeal.

We overrule point of error nine.

## JURY INSTRUCTION ON NECESSITY

32

In point of error ten, appellant contends the trial court erred when it refused his requested jury instruction on necessity. Specifically, appellant admits that he tied up the children and helped steal the complainant's property, but contends he was forced to do so out of fear of his co-defendant, Facundo.

## A. Standard of Review and Applicable Law

Generally, a defendant is entitled to a jury instruction on every defensive issue raised by the evidence as long as such an instruction is properly requested. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999); *Reese v. State*, 877 S.W.2d 328, 333 (Tex. Crim. App. 1994); *McGann v. State*, 30 S.W.3d 540, 547 (Tex. App.—Fort Worth 2000, pet. ref'd); *Miller v. State*, 940 S.W.2d 810, 812 (Tex. App.—Fort Worth 1997, pet. ref'd). If a defendant produces evidence raising each element of a requested defensive instruction, she is entitled to the instruction regardless of the source and strength of the evidence. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996) (recognizing that "an accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the defense"); *Miller v. State*, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991) (op. on reh'g); *Brazelton v. State*, 947 S.W.2d 644, 646 (Tex. App.—Fort Worth 1997, no pet.). The credibility of the evidence presented regarding the defense is immaterial in determining whether the

33

instruction is required. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993); *Miller*, 815 S.W.2d at 585; *Shafer v. State*, 919 S.W.2d 885, 887 n.1 (Tex. App.—Fort Worth 1996, pet. ref'd). A defendant's testimony alone is sufficient to raise a defensive issue requiring an instruction in the jury charge. *Hayes v. State*, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987); *Warren v. State*, 565 S.W.2d 931, 933–34 (Tex. Crim. App. 1978). We review the evidence offered in support of a defensive issue in the light most favorable to the defense. *Shafer*, 919 S.W.2d at 887 n.1.

To raise necessity, a defendant must admit he committed the offense and then offer necessity as a justification. *See Young v. State*, 991 S.W.2d 835, 839 (Tex. Crim. App.), *cert. denied*, 528 U.S. 1063, 120 S. Ct. 618 (1999). The defense of necessity "exonerates a person who commits proscribed conduct in order to prevent an even greater harm." *Acosta v. State*, 660 S.W.2d 611, 614 (Tex. App.—Corpus Christi 1983, no pet.).

The Texas Penal Code authorizes necessity as a justification defense to a criminal charge if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

34

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

TEX. PENAL CODE ANN. § 9.22(1)–(3) (West 2011); *see also id.* § 9.02 (West 1994) (providing "[i]t is a defense to prosecution that the conduct in question is justified under this chapter."). The requirements of subsections 9.22(1) and (2) must be satisfied by evidence, while subsection (3) presents a question of law. *Leach v. State*, 726 S.W.2d 598, 600 (Tex. App.—Houston [14th Dist.] 1987, no pet.).

Section 9.22, subsection (1) sets forth the basic two-prong test a defendant must satisfy in order to be entitled to a jury instruction on the defense of necessity. First, a defendant is required to present evidence that she reasonably believed a specific harm was imminent. *See* TEX. PENAL CODE ANN. § 9.22(1); *Johnson v. State*, 650 S.W.2d 414, 416 (Tex. Crim. App. 1983); *Brazelton*, 947 S.W.2d at 648. "Imminent" means something that is impending, not pending; something that is on the point of happening, not about to happen. *Jackson v. State*, 50 S.W.3d 579, 594–95 (Tex. App.—Fort Worth 2001, pet. ref'd); *Smith v. State*, 874 S.W.2d 269, 272–73 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). Harm is imminent when there is an emergency situation and it is "immediately necessary" to avoid that harm. *Jackson*, 50 S.W.3d at 594–95; *Smith*, 874 S.W.2d at 273. In other words, a split-second decision is required without time to consider the law. *Jackson*, 50 S.W.3d at 595; *Smith*, 874 S.W.2d at 273.

35

Second, a defendant must present evidence that he reasonably believed the criminal conduct was immediately necessary to avoid the imminent harm. See TEX. PENAL CODE ANN. § 9.22(1); *Brazelton*, 947 S.W.2d at 648. "Reasonable belief" means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor. TEX. PENAL CODE ANN. § 1.07(a)(42) (West 2011). As a general rule, determination of the reasonableness of an accused's belief is a question of fact, and should be viewed from the accused's standpoint at the time he acted. *Fitzgerald v. State*, 782 S.W.2d 876, 885 (Tex. Crim. App. 1990); *Brazelton*, 947 S.W.2d at 648 (citing *Sanders v. State*, 707 S.W.2d 78, 79–80 (Tex. Crim. App. 1986)); *Juarez v. State*, 886 S.W.2d 511, 514 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

## B. Analysis

In *Murkledove v. State*, 437 S.W.3d 17, 24–25 (Tex. App.—Fort Worth 2014, pet. dism'd, untimely filed), the defendant, Murkledove, requested a necessity instruction, arguing that "he acted out of necessity to preserve his own life because [a co-defendant] said he would kill [the intended robbery victim] and Murkledove feared that if he did not participate, [the co-defendant] would kill him too." The court held that Murkledove failed to show that he was entitled to a necessity instruction, noting that "nothing in the record reflects that [the co-defendant] may any threats—immediate or otherwise—to Murkledove if he did not

36

assist with the break-in. Even if one could infer that Murkledove feared the possibility of or potential harm to himself or his family, no evidence exists upon which an inference could be made that harm was imminent when he decided to act." *Id.* at 25.

The same is true in this case. There is no evidence that appellant faced any imminent threat of harm from Facundo. As in *Murkledove*, there is no evidence that the co-defendant, Facundo, had made any threats to appellant, immediate or otherwise. Thus, like the court in *Murkledove*, we conclude that appellant has failed to show that he was entitled to a necessity instruction.

We overrule point of error ten.

## JURY INSTRUCTION ON LESSER-INCLUDED OFFENSE OF THEFT

In his eleventh point of error, appellant contends "the trial court erred when it refused appellant's request for a jury instruction on the [misdemeanor] lesser included offense of theft." The charge included an instruction on the lesser-included offense of theft of property of the value of $1,500 or more, but less than $20,000, a state jail felony, but the trial court refused appellant's request for a lesser-included offense of theft of property with a value of less than $1,500.[1]

---

[1] Theft of property is classified as a Class A misdemeanor if the value of the stolen property is $500 or more, but less than $1,500. TEX. PENAL CODE ANN. § 31.03(e)(3) (West Supp. 2014).

37

Specifically, appellant pointed to evidence in his own statement to police in which he stated that he received less than $1,000 from what was taken from Lopez.

## A. Standard of Review and Applicable Law

We review the trial court's decision on the submission of a lesser-included offense for an abuse of discretion. *See Jackson v. State*, 160 S.W.3d 568, 575 (Tex. Crim. App. 2005). The trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to guiding rules or principles. *See Makeig v. State*, 802 S.W.2d 59, 62 (Tex. Crim. App. 1990). Because the trial court has no discretion in determining the applicable law, the trial court also abuses its discretion when it fails to analyze the law correctly and apply it to the facts of the case. *See State v. Kurtz*, 152 S.W.3d 72, 81 (Tex. Crim. App. 2004).

We apply a two-prong test when determining whether a defendant is entitled to an instruction on a lesser-included offense. *See Wortham v. State*, 412 S.W.3d 552, 554 (Tex. Crim. App. 2013); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993); *Royster v. State*, 622 S.W.2d 442, 444 (Tex. Crim. App. 1981). First, we consider whether the lesser-included offense is included within the proof necessary to establish the charged offense. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09; *Flores v. State*, 245 S.W.3d 432, 439 (Tex. Crim. App. 2008). If it is, we then examine whether there is evidence in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty of only the lesser-included

38

offense. *See Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985). The evidence must establish that the lesser-included offense is a valid, rational alternative to the charged offense. *See Segundo v. State*, 270 S.W.3d 79, 90–91 (Tex. Crim. App. 2008). Anything more than a scintilla of evidence is sufficient to entitle a defendant to the lesser charge. *See Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011). We review all of the evidence in the light most favorable to the requested lesser-included offense, regardless of whether the evidence was produced by the State or the defendant, or whether the evidence was strong, weak, unimpeached, or contradicted. *See Bell v. State*, 693 S.W.2d 434, 442 (Tex. Crim. App. 1985).

A person commits a theft "if he unlawfully appropriates property with intent to deprive the owner of property." *See* TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2014). The Penal Code describes several grades of theft ranging from a Class C misdemeanor to a felony of the first degree. *See id.* § 31.03(e). With few exceptions not applicable here, the only element distinguishing one grade of theft from another is the value of the property taken. *See id.* Under Texas law, the value of the property taken is an essential element of the offense. *See Simmons v. State*, 109 S.W.3d 469, 478–79 (Tex. Crim. App. 2003); *Sowders v. State*, 693 S.W.2d 448, 450 (Tex. Crim. App. 1985); *Christiansen v. State*, 575 S.W.2d 42, 44 (Tex.

Crim. App. 1979); *McKnight v. State*, 387 S.W.2d 662, 663 (Tex. Crim. App. 1965).

## B. Analysis

Here, appellant fails to meet the second prong of the test for lesser-included offenses, i.e., there is no evidence that would permit a jury to rationally find that if the defendant is guilty, he is guilty of only a theft of less than $1,500. Although appellant told the officer that his share of the robbery was less than $1,000, he also stated that the amount taken was valued at between $3,000 and $4,000. It is the amount stolen, not the amount of appellant's share of the stolen property, that determines the crime charged. The evidence was that appellant participated in a theft of televisions, a game system, a jewelry box, guns, laptops, drugs, money, and an SUV. There is no evidence that would support appellant's contention that the total of the stolen property was less than $1,000, even if he personally received less. A defendant is not entitled to an instruction of the lesser-included offense of theft unless the record clearly reflects the value of the stolen property. *See Ramirez v. State*, 422 S.W.3d 898, 901–02 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (holding defendant not entitled to lesser-included instruction on theft based on mere speculation as to stolen property's value.).

There being no evidence that the total of the property stolen was less than $1,500, the trial court did not err in overruling appellant's request for an instruction on a lesser-included misdemeanor theft charge.

We overrule point of error eleven.

## COMMENT ON THE WEIGHT OF THE EVIDENCE

In the jury charge, the trial court instructed the jury on the law relating to criminal conspiracy as follows:

> By the term "conspiracy" as used in these instructions, is meant an agreement between two or more persons with intent, that they, or one or more of them, engage in conduct that would constitute the offense. *An agreement constituting a conspiracy, if any, may be inferred from acts of the parties.*

The charge did not reference TEX. PENAL CODE ANN. § 15.02(a)(2) (West 2011), which requires that "one or more of [the co-conspirators] perform[] an overt act in pursuance of the agreement." At trial, and in his twelfth point of error, appellant contends that the second sentence above, coupled with the omission of the requirement of an "overt act," constitutes a comment on the weight of the evidence in violation of article 38.05 of the Code of Criminal Procedure.[2]

---

[2] In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its being in the case, but shall simply decide whether or not it is admissible; nor shall he, at any state of the proceedings previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

TEX. CODE CRIM. PROC. ANN. art. 38.05 (West 1979).

41

## A. Applicable Law

The trial court must provide the jury with "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). Moreover, the trial court may not express "any opinion as to the weight of the evidence." *Id.*; *Walters v. State*, 247 S.W.3d 204, 208 (Tex. Crim. App. 2007). An instruction, albeit facially neutral and legally accurate, may nevertheless constitute an improper comment on the weight of the evidence. *See, e.g., Brown v. State*, 122 S.W.3d 794, 797 (Tex. Crim. App. 2003).

## B. Analysis

In *Brown v. State*, the trial court instructed, in its original charge to the jury, that "intent or knowledge may be inferred by acts done or words spoken." *Id.* Despite the legal accuracy of the instruction, the court of criminal appeals held that it improperly "singles out a specific type of evidence and tells the jury that it may infer an element of the crime" from that evidence. *Id.* at 800–01. The error, the court explained, "lies in instructing the jury that they may apply such an inference." *Id.* at 800 (quoting *Browning v. State*, 720 S.W.2d 504, 507 (Tex. Crim. App. 1986)). This is because the inference is "a judicial review device" or "a common-sense tool for a trial judge" used to gauge evidentiary sufficiency, "not an explicit legal tool for the jury." *Id.* at 802–03. The court thus concluded that, although a "close call," the trial court erred because it "focus[ed] the jury's

42

attention on the type of evidence that may support a finding of criminal intent." *Id.* at 802.

The same is true in this case. The court's instruction that "[a]n agreement constituting a conspiracy, if any, may be inferred from acts of the parties[,]" is a correct statement of the law. *See* TEX. PENAL CODE ANN. § 15.02(b) (West 2011). However, like the instruction in *Brown*, by referring to an inference that is used for judicial review, it "focus[ed] the jury on the type of evidence" that may support a finding of a criminal conspiracy. *See Brown*, 122 S.W.3d at 802. Thus, we conclude that the trial court erred by including the challenged instruction in the charge.

## *C. Harm*

Thus, we must decide whether the error is harmful. If, as here, the error in the charge was the subject of a timely objection in the trial court, reversal is required if the error is "calculated to injure the rights of the defendant" which means that there must be some harm to the accused from the error. *Id.* at 803 (*citing Almanza v. State*, 686 S.W.2d 157, 171 (Tex. 1984)).

In *Brown*, the Court of Criminal Appeals concluded that the instruction, which is very similar to the instruction in this case, "was mild, neutral, and an obvious common-sense proposition[,]" and did nothing more than what the parties

43

themselves did at trial, i.e., focus on whether appellant's acts and words demonstrated his intent to kill. *Id.*

Here, the instruction that "a conspiracy may be inferred from acts of the parties," like the instruction in *Brown*, "was benign, albeit improper," and focused the jury on the acts of the parties in forming the conspiracy, just as was done by litigants at trial. *See id.* As such, "the error was not, in any sense, harmful under *Almanza.*" *See id.*

We overrule appellant's twelfth point of error.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

44