HOMER H. McCRAY, Appellant, v. MISSOURI-KANSAS & TEXAS RAILROAD COMPANY.—10 S. W. (2d) 936.

Division One, October 3, 1928.

18

*Atwood, Wickersham, Hill & Chilcott* for appellant.

*Cooper & Neel, Carl S. Hoffman* and *Whitson G. Rogers* for respondent.

LINDSAY, C.—This is a suit in which the sum of $25,000 is asked as damages on account of personal injuries sustained by plaintiff,

appellant, and alleged to be the result of defendant's negligence. In its general outline, plaintiff's claim is, that on the night of July 25, 1923, he was walking east on Grand Avenue, a public street extending east and west, in the city of Parsons, Kansas, crossed from north to south by several tracks of defendant's railway; that in walking over the fifth track, from the west, his left foot caught against a raised plank inside the east rail of said fifth track, causing him to stumble over said east rail and to set his right foot into a depression on the east side of the east rail of said fifth track, whereby he was caused to fall forward toward and upon the west rail of the sixth track, on which, at the time, one of defendant's passenger trains was moving southward, so that his left arm near the wrist was caught on the rail and run over by the wheels of said train. Amputation of his arm below the elbow was performed the same night.

The negligence alleged was the maintenance by defendant of the crossing in an uneven, unsafe and dangerous condition, due to the existence of humps and depressions therein. At the close of the plaintiff's evidence the court gave the peremptory instruction offered by defendant, whereupon plaintiff took an involuntary nonsuit with leave. His appeal is from the order denying his motion to set aside the nonsuit. The court in giving the peremptory instruction stated the grounds of his ruling, and the respective opposing contentions made on appeal take the court's statement as one defining the issue emphasized by counsel for both sides. The case is characterized by counsel in their briefs as "a one-point case." The statement of the court was a voluntary act, and one not required to be made, but since it covers and defines the issue treated in the briefs we set it out:

"The question for decision is whether the manner in which plaintiff testified that he fell on the tracks, and got his hand over the rail of the tracks, was a natural and probable consequence of the unsafe condition of the tracks. As shown in the evidence, when the plaintiff stumbled he was eight and one-half feet away from track number 6, and couldn't have got his hand over said track naturally in the course of the fall, but of course he could have put his hand over the rail. I do not intend to intimate that he did so, or that I think he did so, but he himself says that he endeavored to stretch his arms out at full length in order to reach and support himself against the side of the cars moving on track number 6. Accepting his statement as true, the act was so unnatural and improbable as not to be a legal consequence of defendant's wrongful acts. For that reason I have reached the conclusion that the demurrer to the evidence should be sustained."

The plaintiff at the time of his injury was twenty-seven years of age, and in the employ of defendant railway company in one of its shops at Parsons. He was a married man, and testified that on the

afternoon of the day in question he quit work, for the day, at about four o'clock, and went to his home, and remained there until after the evening meal; and at about eight o'clock went to a colored church where a revival meeting had been going on, distant about two blocks from his home; that he remained there a short time, and left—did not start to go directly home, but intended to see another man; that about 8:30 P. M. he was walking east on Grand Avenue approaching the crossing of defendant's tracks. There were six or more tracks at this crossing. There was no sidewalk on the north side of Grand Avenue. The plaintiff walked eastward upon the sidewalk on the south side, until he reached the west side of the crossing. The sidewalk did not extend over the crossing, and pedestrians passed over the crossing along the general course used also for vehicles. As he came to the first track, where the sidewalk ended, it appears from his cross-examination, he stumbled slightly. He turned more into the center of the street. There was no street light or crossing light burning, and he testified that it was dark at the time. He walked eastward over the crossing, using the main or middle part of the street. Testimony of witnesses other than the plaintiff himself was that the north end of the plank inside of the east rail of the fifth track from the west, was raised, or "cupped up," about three inches or more above the level of the general surface of the crossing. There was also testimony other than that of plaintiff himself that opposite to this cupped-up place near to and on the east side of this fifth rail, there was a depression of several inches below the surrounding surface, and that the area of this depression, as one of the witnesses put it, was about the "size of a tub." The plaintiff testified that as he approached the crossing, a freight train went north on one of the west tracks, and that immediately afterward, and as he walked eastward over the crossing, a passenger train was moving south upon the sixth track, at a speed of five or six miles an hour, and picking up speed. Describing in direct examination what happened, as he was passing over the fifth track, he said: "I stumbled over a plank with my left foot, and threw my right foot forward to catch myself and stepped in a vacancy, a hole, and lost my balance and went directly forward under the train. My arms went across the track." On cross-examination in response to a question he said: "When I stumbled I tried to catch myself—threw my hands up trying to hit the car to throw myself back, and missed the car and fell under the car." The plaintiff said the distance from the east rail of the fifth track to the west rail of the sixth track was about eight and one-half feet. One of his witnesses said the intervening distance at that place was seven or eight feet. Tracks 5 and 6 are not parallel at that place, and come to-

gether at a point about fifty feet south. Plaintiff said his own height was five feet nine inches. Plaintiff said both his arms went across the rail; that he fell behind one pair of trucks of the passing car and the wheel of the second truck caught his left hand and crushed it off. In his testimony on the trial the plaintiff said he had not walked across that place before, but had been across it in cars in the evening, and did not know that the plank in question was sticking up when he started over the crossing, nor that the hole was there when he started over the crossing. As the crossing is described by the witnesses, there was a plank on each side of each of the rails composing a track, and the intervening space was filled with chat, or chat and cinders mixed. The testimony tends to show that at about midway of the crossing, between north and south, the end of a plank inside of the east rail of track five, was raised above the general surface of the crossing, and held up by gravel and dirt under the plank. The depression on the east side of the fifth track was described as a place where "cars and wagons had whipped out a big hole." There was testimony that this "hole" or depression was four or five inches deep, and as described and located by the testimony of plaintiff's witnesses, it was about four inches east of the plank on the east side of the east rail of track five, and opposite, or east, of the raised end of the plank inside or west of the east rail of track five. Each of the planks was ten inches wide. The plaintiff said that it was his intention after crossing track 5, to turn and walk north between tracks 5 and 6, toward the part of the city where he expected to find a man he desired to see.

The paramount question to be determined is whether it must be said as a matter of law that the negligence of defendant, in its maintenance of the crossing, was not the proximate cause of the plaintiff's injury. A rule to be considered is stated in ▮▮▮▮ State ex rel. v. Ellison, 271 Mo. l. c. 474, a case cited by defendant, wherein after reference to numerous authorities, it was said:

"From it all, we take it, that the established rule of this court is that if the injury, as occasioned, was not one which could have reasonably been anticipated as a sequence of the alleged negligent act, then the alleged negligent act was not in law the proximate cause of the injury, and no recovery can be had therefor."

The substance of the contention for defendant is that the manner of the plaintiff's injury, as related by him, the manner in which he said he fell on the tracks, is unnatural and improbable, so much so, that his injury cannot be regarded as a natural and probable or legal consequence of the claimed negligence. This, in effect, is saying that conceding defendant's negligence, and plaintiff's in-

jury in the manner in which he said it occurred, it was so exceptional in manner of occurrence, that it could not reasonably have been anticipated to follow as the consequence of the alleged negligence, and hence there is no liability. It is not a necessary condition that the defendant did or could have foreseen the very injury complained of. In Washburn v. Laclede Gas Light Co., 202 Mo. App. l. c. 115, also a case cited by defendant, there is statement of another rule to be borne in mind:

" 'The liability of a person charged with negligence does not depend on the question whether with the exercise of reasonable prudence, he could or ought to have foreseen the very injury complained of; but he may be held liable for anything which, after the injury is complete, appears to have been a natural and probable consequence of his act or omission.' "

The rule with some added qualification is stated in Buckner v. Horse & Mule Co., 221 Mo. l. c. 710, as follows:

"It is not essential that defendant could have anticipated the very injury complained of, or that it could have anticipated that it would have occurred in the exact manner in which it did occur, but it is sufficient if the negligence of the defendant was the proximate cause of the injury."

In the Washburn case, particularly, and also in State ex rel. v. Ellison, there is discussion of the question of when the original negligence of a party is not to be regarded as the proximate cause of the injury complained of, or, conversely, whether the injury is not to be regarded as the legal consequence of the original act of negligence, by reason of the interposition of some new and independent cause, as the act of a third person, interrupting the sequence of events. Upon inquiry into situations of that kind it was said:

"The test is whether the party guilty of the first act or omission might reasonably have anticipated the intervening cause as a natural and probable consequence of his own negligence, and if so, the connection is not broken."

There is not included in the instant case the interposition or intervening act of a third person. In this case the argument as to the unnatural or improbable manner of occurrence of the injury, and therefore the contention that it was not reasonably to have been anticipated, is founded on the evidence showing the existence of certain physical conditions at the time and place, and especially is emphasized, the distance between tracks 5 and 6 and the effort made by plaintiff when falling, to strike the passing car with his hands. For the purposes of the inquiry upon demurrer to the evidence, it is to be assumed that plaintiff did not throw forward his hands with intent to maim himself, but did so, as he said, to protect himself from falling down completely, or from falling under the wheels,

24

When his testimony is considered it can reasonably be inferred that he fell forward from the point in the hole where his right foot struck as he stumbled across the east rail of track 5. This point was approximately one and one-half feet east of the east rail of track 5, and therefore distant from the west rail of track 6 not to exceed seven feet, and it may have been somewhat less. Two witnesses said the distance between the two tracks at that place was seven or eight feet. When plaintiff's height of five feet nine inches is considered, and there is further considered the fact that in falling forward his arms were extended, it became a question for the jury whether his arms extended to and over the rail of track 6. Whether this act of thrusting forth his hands was the natural and instinctive movement of a person suddenly stumbling and falling forward, as related by him, cannot be regarded conclusively as unnatural and improbable under the circumstances shown, nor the other claim, that his hands, not reaching or striking against the side of the car, came upon the rail under the car. The plaintiff said the overhang of the car over the rails was about two feet, and while the evidence is not definite it appears that the box or body of the car was about two and one-half or three feet above the rails. Some of the cases cited in the briefs, especially the brief of counsel for the plaintiff, deal with the question of whether the manner of the occurrence of the injury as testified to, was contrary to established physical facts or to known physical laws. In one of the cases cited, Kibbler v. Q. O. & K. C. Ry. Co., 285 Mo. 1. c. 618, it was said:

"When established physical facts and common observation and experience conflict with the testimony of a witness, such testimony does not amount to substantial evidence of the alleged facts testified to and cannot be accepted as the basis of a verdict and judgment. [Phippin v. Railway, 196 Mo. 321, 343; Sexton v. Railway, 245 Mo. 254, 272.] Yet, so frequently do unlooked-for results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law and fact except when they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other. [10 R. C. L. 1009.] Plaintiff's testimony should be weighed in the light of these general principles."

The like question was under consideration, and a similar statement made, in Warnke v. Rope Co., 186 Mo. App. 1. c. 41. We cannot say that the plaintiff's statement is plainly and palpably incompatible with established physical facts or physical laws.

Additional to the cases cited by counsel for defendant, and heretofore mentioned, they call attention to numerous others: Benton v. St. Louis, 248 Mo. 98; Hunter v. Busy Bee Candy Co., 307 Mo. 656;

American Brewing Assn. v. Talbot, 141 Mo. 674; Fuchs v. St. Louis, 167 Mo. 623; Wilt v. Coughlin, 176 Mo. App. 275; Chandler v. Gas Co., 174 Mo. 321; Zasemowich v. American Mfg. Co., 213 S. W. 799; Christy v. Hughes, 24 Mo. App. 275; DeMoss v. K. C. Rys. Co., 296 Mo. 526; Wilson v. M., K. & T. Ry. Co., 129 Mo. App. 658; Foley v. McMahon, 114 Mo. App. 442. The problem in each was that of proper application of certain accepted rules, to the facts of the particular case.

We refer briefly to some of the cases mentioned. In Hunter v. Busy Bee Candy Company, the plaintiff, by an over exertion of his strength, injured himself in attempting to move an automobile away from a platform to make place for the truck used by him in the service of his employer. He applied to defendant's manager within the adjacent building for help, and was told that no help was available, and that he would have to do it himself. The manager had no knowledge of the weight, size, character or the location of the automobile to be moved, and these circumstances were not told to him by the plaintiff, who, unaided, undertook to move the automobile, and it was held that, under the circumstances, his injury was not reasonably to have been anticipated by the defendant, and hence was not the proximate result of defendant's negligence.

In American Brewing Association v. Talbot, the ground on which it was held there was no liability upon the defendant, was, that the injury resulted from an unprecedented rise in the waters of the Mississippi River which the defendant was not bound to have anticipated.

In Chandler v. Gas Company, the plaintiff fell into a hole, made by a person who had excavated and hauled away a load of cinders from defendant's dump yard. The cinders hauled away were not taken from the place in the dump where defendant had given the privilege of hauling away cinders, and defendant and its employees did not know, or have reasonable opportunity to know, that the hole in which plaintiff fell had been dug, or know that there had been any hole, or cinders taken from any other part of the dump than the place at which the privilege had been given.

In Wilt v. Coughlin, the plaintiff, a tenant of defendant, sued for injury to plaintiff's horse, which fell into a cess pool in the yard of the leased premises. Recovery was denied because the evidence showed the parties to the rental contract never contemplated that plaintiff's horses should run in the yard, or part of the premises where the cess pool was located.

In Wilson v. M., K. & T. Railroad, the right to recover was based upon the claim that defendant permitted Texas cattle to escape upon

the highway; that one of such highways led to plaintiff's pasture, and as a result, the highway was quarantined, and patrons withdrew their cattle from his pasture. The injury was held not to be the natural and probable result of the alleged negligence.

In Foley v. McMahan, the plaintiff, who was driving a wagon for defendant, alighted to fix a defective tug, which had broken. While he was doing so, and had his foot placed in front of one of the wheels of the wagon, the mules which drew the wagon started, and pulled the wheel over the plaintiff's foot. The movement of the mule was held to be an act independent of the breaking of the defective tug. These, and the other cases cited, are instructive illustrations of the application of known and accepted rules to the facts in the given case. No one of them is closely similar in circumstances to the case at bar.

In this case the plaintiff's injury occurred upon the crossing of a public street. The plaintiff pleaded and put in evidence certain statutes of Kansas, prescribing the duty of railroad companies in the construction and maintenance of such crossings; also the statute concerning the powers of cities of the class of the city of Parsons, in reference to such crossings, and an ordinance of the city on that subject.

The determination of the question of proximate cause is sometimes one of law for the court, but ordinarily it is one of fact for the consideration and determination of the jury. [Hogan v. Fleming, 297 S. W. 408, and cases there cited.] The question to be determined is one of fact in view of the circumstances of fact attending the injury. Under the circumstances here shown we are not warranted in holding as a matter of law, that plaintiff's injury was not the proximate result of the alleged negligence of defendant.

It is suggested also that plaintiff is not entitled to recover as a matter of law, because he left a place of safety and moved into a place of danger and was thereby injured. Our attention is also called to Keele v. Atchison, Topeka & Santa Fe Railroad Co., 258 Mo. 62, where it was held that an injured party, who is *sui juris*, and who negligently moved from a place of safety to a place of danger so close before a moving engine or car that by ordinary care his injury could not be averted, there was no room for the play of the humanitarian doctrine; and, that the doctrine of concurrent negligence, in its full force, operated as a defense, and we are further cited to certain rulings in courts of other jurisdictions. In this case the plaintiff was not attempting to cross a track, in front of a near and approaching train. His testimony was that it was his intention after crossing the east rail of track 5, to

turn to the left, or north, between tracks 5 and 6; and, as heretofore stated the evidence was there was a space of seven or eight feet between track 5 and track 6. The circumstances do not compel the holding as a matter of law, that the plaintiff was guilty of negligence, contributing to his injury, in crossing the east rail of track 5.

We hold the case was one for the jury, and the judgment is reversed and the cause remanded. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.