

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| D.J., BY AND THROUGH HIS NEXT FRIEND, R.J., | ) | *Opinion issued February 28, 2025* |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. SC100702 |
| | ) | |
| FIRST STUDENT, INC., | ) | |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS
**The Honorable Rex Burlison, Judge**

First Student, Inc., appeals the circuit court's judgment overruling its motion for judgment notwithstanding the verdict (JNOV). Because the criminal act of a third party was an intervening and superseding event, D.J. failed to prove any action First Student took or failed to take was the proximate cause of D.J.'s injuries. The judgment is vacated, and the case is remanded. [1]

### Factual and Procedural History

The material facts are undisputed. In 2019, fourth-grader D.J. attended KIPP Victory Academy. KIPP had contracted with First Student to transport children to and

---

[1] This Court transferred the appeal following an opinion by the court of appeals and has jurisdiction pursuant to article V, section 10 of the Missouri Constitution.

from school during 2017. In that role, First Student planned all bus routes, stops, and schedules. First Student's contract also required it to provide each driver with an updated route sheet and student list before any run.

At the start of the 2019-2020 school year, First Student's route sheet directed its bus drivers to drop D.J. off at the northwest corner of the intersection of Goodfellow and Lalite. On the afternoon of October, 23, 2019, however, substitute bus driver Tomika Richardson dropped D.J. off at the southeast corner of Goodfellow and Lalite. D.J. safely reached home after crossing Goodfellow and Lalite.

The next day, Richardson again stopped to drop D.J. off at the southeast corner of the intersection. She checked her mirrors for traffic, extended the stop arm, and activated the flashing lights. D.J. exited the bus and began crossing Goodfellow in front of the bus.

As D.J. crossed the street, the vehicle stopped directly behind the bus maneuvered around the left side of the bus toward D.J. Richardson laid on her horn and yelled at the driver, but the driver accelerated toward D.J. The driver struck D.J. while he was crossing Goodfellow, before running through a stop sign and speeding away. The collision fractured D.J.'s left ankle and sprained his right ankle. The hit-and-run driver was never identified.

D.J., through his mother, sued First Student and Richardson. In relevant part, D.J. pleaded that First Student, acting through its agent Richardson, negligently dropped D.J. off at an unreasonably safe location (Count I). In addition, D.J. pleaded that First Student negligently failed to provide Richardson with a route sheet, had negligently failed to advise Richardson of what the route sheet said, and had negligently failed to tell Richardson that D.J.'s grandmother's house was located on Lalite west of Goodfellow (Count II).

The case proceeded to a jury trial. At the close of D.J.'s evidence, First Student moved for a directed verdict, which the circuit court overruled. First Student renewed its motion at the close of evidence; the circuit court, again, overruled the motion.

The jury returned a verdict in favor of bus driver Richardson on Count I but in favor of D.J. on Count II and assessed D.J.'s damages at $1.3 million. The circuit court overruled First Student's motions for JNOV and new trial and entered judgment on the jury's verdict.

First Student appeals, claiming the circuit court erred in overruling its motion for JNOV because: (1) First Student satisfied any duty it owed by dropping off D.J. in a reasonably safe location;[2] and (2) the criminal acts of the hit-and-run driver were an intervening and superseding cause that became the new proximate cause of D.J.'s injuries.

**Preservation**

"To preserve the issue of submissiblity in a jury-tried case, a party must file a directed verdict motion and a motion for [JNOV] should there be an adverse verdict." *Rhoden v. Mo. Delta Med. Ctr.*, 621 S.W.3d 469, 476. A "motion for directed verdict at the close of [the] plaintiff's case is necessary" if the "defendant seeks to have the case determined at that point without introduction of additional evidence." *Sanders v. Ahmed*, 364 S.W.3d 195, 207 (Mo. banc 2012). "If this motion is overruled, the moving party may elect to rest or present additional evidence." *Rhoden*, 621 S.W.3d at 476. And if "the moving party elects to present additional evidence," "there must be another directed verdict

_____

[2] This Court need not and does not reach the issue of whether First Student breached any common law or added contractual duty because this case is resolved on the legal determination that D.J. failed to prove the element of proximate cause.

3

motion filed at the close of all of the evidence to challenge the submissibility of the plaintiff's case." *Id.* In that case, a "motion for directed verdict at the close of all evidence becomes the meaningful motion to preserve the issue as it presented itself to the trial court at that time, prior to submission to the jury." *Sanders*, 364 S.W.3d at 207. "After verdict, of course, a motion for JNOV also is required to preserve the issues raised for appeal." *Id.* at 207-08.

First Student included its claim that D.J. had failed to make a submissible case in a motion for a directed verdict at the end of its own evidence and presented this claim in a timely motion for JNOV after the circuit court entered judgment. As required by Rule 72.01, First Student specifically stated D.J. had failed to make a submissible case because the criminal acts of the hit-and-run driver were an intervening and superseding cause. First Student preserved this claim for appellate review.

**Standard of Review**

When reviewing a circuit court's denial of a judgment notwithstanding the verdict, "[t]his Court must determine whether the plaintiff presented a submissible case by offering evidence to support every element necessary for liability." *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 95 (Mo. banc 2010). "Evidence is viewed in the light most favorable to the jury's verdict, giving the plaintiff all reasonable inferences and disregarding all conflicting evidence and inferences." *Smith v. Brown & Williamson Tobacco Corp.*, 410 S.W.3d 623, 630 (Mo. banc 2013) (internal quotation omitted). "Whether the plaintiff made a submissible case is a question of law that this Court reviews *de novo*." *Newsome v. Kan. City, Mo. Sch. Dist.*, 520 S.W.3d 769, 775 (Mo. banc 2017) (internal quotation

4

omitted). A JNOV motion "should be granted if the defendant shows that at least one element of the plaintiff's case is not supported by the evidence." *Id.* (internal quotation omitted).

## Analysis

In an action for negligence, the plaintiff must establish the defendant owed a duty of care to the plaintiff, the defendant breached that duty, and the defendant's breach was causally connected to the plaintiff's injury. *State ex rel. Tyler Techs., Inc. v. Chamberlain*, 679 S.W.3d 474, 477 (Mo. banc 2023). "In all tort cases, the plaintiff must prove that each defendant's conduct was an actual cause, also known as cause-in-fact, of the plaintiff's injury[.]" *City of St. Louis v. Benjamin Moore & Co.*, 226 S.W.3d 110, 113 (Mo. banc 2007). "Once actual causation has been established, the issue becomes one of legal cause— also known as proximate cause—that is, whether the defendant should be held liable because the harm is the reasonable and probable consequence of the defendant's conduct." *Id.* at 114. Actual causation is a factual question for the jury "if sufficient evidence is presented from which the jury could reasonably find that the plaintiff's injury was a direct result of the defendant's negligence." *Payne v. City of St. Joseph*, 135 S.W.3d 444, 450 (Mo. App. 2004).

On the other hand, proximate cause is a "legal determination" that presents a question of law for the circuit court. *Poage v. Crane Co.*, 523 S.W.3d 496, 513 (Mo. App. 2017) (emphasis omitted). This approach fits Missouri's unique jury instructions. "[U]nder MAI [the courts] do not use the terms 1) 'proximate cause,' 2) 'but for causation,' or 3) 'substantial factor' when instructing the jury. [The court] merely instruct[s] the jury that

5

the defendant's conduct must 'directly cause' or 'directly contribute to cause' plaintiff's injury." *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 863 (Mo. banc 1993). But proximate cause is synonymous with the phrase "directly resulted from." *State ex rel. Mo. Highway & Transp. Comm'n v. Dierker*, 961 S.W.2d 58, 60 (Mo. banc 1998). So Missouri jurors are never instructed to consider whether a third party's act was a superseding cause. *See Poage*, 523 S.W.3d at 513. "Accordingly, it is the trial court's role—not the jury's function—to determine if a defendant's conduct is the "proximate cause" of the plaintiff's injuries[.]" *Id.*; *see also Wagner v. Bondex Int'l, Inc.*, 368 S.W.3d 340, 350-51 (Mo. App. 2012).

To determine the legal issue of proximate cause, a court must determine whether the plaintiff presented evidence that their injuries were "a reasonable and probable consequence of the act or omission of the defendant." *Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC*, 587 S.W.3d 647, 657 (Mo. banc 2019) (internal quotation omitted). Proximate cause looks at "the scope of foreseeable risk created by the defendant's act or omission." *Nail v. Husch Blackwell Sanders, LLP,* 436 S.W.3d 556, 563 (Mo. banc 2014). This analysis "relies upon hindsight to determine whether the precise manner of a particular injury was a natural and probable consequence of a negligent act." *Lopez v. Three Rivers Elec. Co-op., Inc.*, 26 S.W.3d 151, 156 (Mo. banc 2000).

When the acts of two or more persons combine to injure a person, "there is a question as to whether the initial act of negligence was the proximate cause of the injury or whether there was an efficient, intervening cause." *Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 710 (Mo. banc 1990) (internal quotation omitted). "An intervening cause

6

must be a new and independent force which so interrupts the chain of events that it becomes the responsible, direct, proximate, and immediate cause of the injury." *Gathright v. Pendegraft*, 433 S.W.2d 299, 308 (Mo. banc 1968) (internal quotation omitted).

> "If a prior and remote cause does nothing more than give rise to an occasion by which an injury is made possible, and there intervenes between that cause and the injury a distinct and unrelated cause of injury, a negligence action does not lie, even though the 'but for' test is satisfied."

*Tompkins v. Cervantes*, 917 S.W.2d 186, 191 (Mo. App. 1996).[3] When the intervening cause becomes the proximate cause of the plaintiff's injury, the defendant is relieved from liability as a matter of law. *See Boese v. Love,* 300 S.W.2d 453, 458-59 (Mo. 1957).

The dispositive issue here is whether First Student's failure to provide Richardson with the route information was the proximate cause of D.J.'s injuries – or whether the criminal acts of the hit-and-run driver were the proximate cause of D.J.'s injuries. The criminal act of a third party is "rarely foreseeable." *Harner v. Mercy Hosp. Joplin*, 679 S.W.3d 480, 484 (Mo. banc 2023).[4] "[E]ach case must be decided on its own facts, and it is seldom that one decision controls another." *Krause*, 787 S.W.2d at 710.

---

[3] *Dix v. Motor Market, Inc.*, 540 S.W.2d 927 (Mo. App. 1976), illustrates how a negligent defendant's liability can be superseded by the act of a third party. There, a defendant left his car unlocked, with the keys in the ignition, in a parking garage. *Id.* at 929. A third party stole the car. *Id.* The next day, the third party hit and killed the decedent plaintiff with his car. *Id.* As a matter of law, "the intervening independent act of negligence on the part of the thief who stole the auto was the direct and proximate cause of the fatal injuries suffered by the decedent." *Id.* at 933. The third party's "negligent driving could not have been reasonably foreseen" because the defendant's act of leaving his keys in his ignition was a "remote cause." *Id.* Instead, the third party's negligent driving—not the defendant's act of leaving his keys in his car—was the proximate cause of decedent's death. *Id.*

[4] In a separate line of cases, this Court has held businesses have a duty to protect their invitees from "special facts and circumstances" that "render injury foreseeable in a given

7

The hit-and-run driver's criminal actions in this case broke the causal chain. Passing a stopped school bus violates § 304.050.1,[5] which provides:

> the driver of a vehicle upon a highway upon meeting or overtaking from either direction any school bus which has stopped on the highway for the purpose of receiving or discharging any school children and whose driver has in the manner prescribed by law given the signal to stop, shall stop the vehicle before reaching such school bus and shall not proceed until such school bus resumes motion, or until signaled by its driver to proceed.

Further, any person who violates this section in a manner that "results in the injury of a child shall be guilty of a class E felony." § 304.070. To be clear, the driver's actions after striking D.J.—which could be charged as leaving the scene of an accident and a stop sign violation—are not relevant to this analysis. A person's actions after injuring a plaintiff cannot be a proximate cause of that person's injuries.

In addition to committing a criminal act, the hit-and-run driver also crossed a double yellow line before striking D.J. This accident also occurred before a stop sign in a residential neighborhood. The sudden, unexpected decision of the hit-and-run driver to violate state law by maneuvering past a stopped school bus with its arm out and lights flashing to strike a child crossing the street is the type of "surprising, unexpected, or freakish," third party action exceeding "the natural and probable consequences of [the] defendant's actions." *Dierker*, 961 S.W.2d at 61.

Public policy reinforces the conclusion that the criminal act of the hit-and-run driver was a superseding cause. In addition to providing for criminal penalties against drivers

---

case." *Harner*, 679 S.W.3d at 484. As these cases involve the question of duty, not proximate cause, these cases are inapplicable.
[5] All statutory references are to RSMo 2016, unless otherwise stated.

who pass stopped school buses, section 304.050 imposes several obligations on school bus companies and drivers. First, school buses are required to have several prominent signs – some of which instruct drivers how to follow state law regarding school buses. Every school bus must have "a plainly visible sign" on the front and rear identifying the school bus. § 304.050.2. Each bus "shall have lettered on the rear in plain and distinct type the following: 'State Law: Stop while bus is loading and unloading.'" *Id.* Every school bus "which has a gross vehicle weight rating of more than ten thousand pounds, which has the engine mounted entirely in front of the windshield and the entrance door behind the front wheels, and which is used for the transportation of school children shall be equipped no later than August 1, 1998, with a crossing control arm." § 304.050.3. When activated, the arm "shall extend a minimum of five feet six inches from the face of the front bumper." *Id.*

School bus drivers also have to follow statutory mandates while operating a school bus. As relevant here, "the driver of a school bus in the process of loading or unloading students upon a street or highway shall activate the mechanical and electronic signaling devices." § 304.050.4. These signals "communicate to drivers of other vehicles that students are loading and unloading." *Id.* It is undisputed that First Student and its employee Richardson followed all of these statutory obligations in this case. All of these provisions exist to drastically reduce the likelihood that a driver will attempt to pass a school bus and strike a child.

9

## Conclusion

The criminal act of a third party was the proximate cause of D.J.'s injuries. Because D.J. failed to make a submissible case for the element of proximate cause, the circuit court erred in overruling First Student's motion for JNOV. The judgment is vacated, and the case is remanded to the circuit court to enter judgment not withstanding the verdict in First Student's favor.

_____
Zel M. Fischer, Judge

Russell, C.J., Ransom, Broniec, and Gooch, JJ., concur;
Wilson, J., dissents in separate opinion filed; Powell, J.,
concurs in opinion of Wilson, J.



# SUPREME COURT OF MISSOURI
## en banc

D.J., BY AND THROUGH HIS )
NEXT FRIEND, R.J., )
                     )
     Respondent, )
                     )
v. )     No. SC100702
                     )
FIRST STUDENT, INC., )
                     )
     Appellant. )

## DISSENTING OPINION

The principal opinion vacates the circuit court's judgment and remands the case for entry of judgment for First Student notwithstanding the jury's verdict. The principal opinion holds the unidentified driver's actions in passing the school bus and striking nine-year-old D.J. were an intervening cause sufficient to insulate First Student from liability for its negligence in failing to provide the route sheet showing where D.J. was to be dropped off, the specific location of D.J.'s drop, or even the location of D.J.'s home. For the following reasons, I respectfully dissent.

### Background

D.J. attended KIPP Victory Academy. KIPP solicited bids for transportation services stating, in part, the "safety of our students is our primary priority[.]" KIPP

sought a transportation company to implement a "comprehensive safety plan," including "continuing on-the-road training and classroom training for all drivers[.]" It hired First Student to do so.

First Student agreed it would be "primarily responsible for planning all routes, stops and schedules in coordination with and based on [KIPP's] specifications." Among many other responsibilities, First Student agreed it would "ensure that each driver will have an updated route and/or student listing prior to making any run."

In 2019, D.J. lived on the south side of Lalite Avenue (a smaller, two-lane road running roughly east and west), west of the intersection with Goodfellow Boulevard (a busier, two-lane road running roughly north and south). The intersection of Goodfellow and Lalite is a four-way stop. First Student used D.J.'s address and its safety protocols to create a route sheet showing each student's pick-up and drop-off locations. For D.J., the route sheet showed the intersection of Goodfellow and Lalite and, more specifically, showed D.J. should be dropped off on the "NW CRNR" (or northwest corner) of that intersection. In other words, the bus would approach the intersection from the north, driving south on Goodfellow. It would drop D.J. on the northwest corner of that intersection (i.e., before crossing Lalite) so D.J. would only have to cross Lalite to walk home. He would not need to walk in front of or behind the bus and would not have to cross Goodfellow at all. The following picture shows the Goodfellow/Lalite intersection, approached from the south and heading north on Goodfellow.



First Student was well aware that "danger zones are areas outside the bus where children are in the most ***danger of being hit***, either ***by another vehicle*** or by their own bus." (Emphasis added). The driver training manual states the most dangerous zones are in front of and behind the bus. The manual states "the area to the left of the bus is always considered dangerous because of passing cars" and includes a diagram marking the area to the left of the bus: "Danger From Passing Cars." When a vehicle passes a school bus from the rear (i.e., in the same lane as the bus), the vehicle's driver cannot see a child crossing that street in front of the bus until the child emerges from the blind spot the bus creates. The following illustration is from First Student's manual:

3



THE DANGER ZONES

The drop-off location for D.J. on the northwest corner of Lalite and Goodfellow was chosen so D.J. would not have to enter the "danger zone" on the left side of the bus and would not have to cross in front of or behind the bus. The route sheet showed the bus would first approach the Lalite/Goodfellow intersection from the south but indicated that D.J. should not be dropped off on the southeast corner of that intersection. Doing so would require D.J. to alight, cross through the blind spot in front of the bus, and emerge to cross both lanes of Goodfellow to reach his home. Instead, the bus was to turn left on Lalite, right on Wilborn Drive, right on Garesche Avenue, and then right on Goodfellow (heading south) so it could approach the Lalite/Goodfellow intersection from the north. The entire purpose of this circuitous route was to position the bus to drop D.J. off on the northwest corner of the intersection so he would not have to cross Goodfellow and would never have to cross into or out of the blind spots in front of or behind the bus, spots the manual labels "most dangerous." Instead, he would cross Lalite and never need to enter

4

the area to the left of the bus identified by First Student as a "danger zone" and without having to face the risk that First Student labeled as "Danger From Passing Cars" as he crossed Goodfellow.

First Student and its drivers complied with the route sheet for two months, dropping D.J. off on the northwest corner of Goodfellow/Lalite. On October 23, 2019, however, a substitute driver ("T.R."), drove D.J.'s bus. First Student failed to give this driver the route sheet, did not tell this driver to drop D.J. off on the northwest corner of Goodfellow and Lalite, and did not tell her D.J. lived west of Goodfellow. Instead, First Student merely gave the substitute driver a list of intersections where children were to be dropped off, with no indication as to which corner of each intersection the driver should use. As a result, D.J. was dropped off on the southeast corner, which was the easiest for the driver because the bus was generally traveling south to north. D.J. walked in front of the bus, crossed Goodfellow, and proceeded to his home without incident.

The next day, however, the risk identified by First Student in its manual (i.e., that a child could be struck by a passing vehicle as the child emerged from the blind spot created by the bus) materialized. Not knowing where D.J. lived (and plainly not recalling from the day before that D.J. would need to cross Goodfellow if he was dropped off on the southeast corner of the intersection), the substitute driver asked: "Anyone for Lalite and Goodfellow?" Someone said, "D.J.," and the substitute driver responded, "Oh, D.J." The driver activated the caution lights, extended the stop arm, and opened the door at the southeast corner of the intersection. D.J. stepped down to the pavement, passed in front of the bus on his way across Goodfellow, stepped out from the blind spot created by the

5

bus, and was immediately struck by a northbound vehicle passing the bus on the bus's left side (i.e., the side First Student's manual identified as a "danger zone" and labeled: "Danger From Passing Cars"). The driver of the vehicle that struck D.J. left the scene and has not been identified.

The case was tried on two very different theories of liability. First, D.J. claimed First Student and the substitute driver were liable for the driver's negligence in dropping D.J. on the southeast corner because it was not reasonably safe. Second, D.J. claimed First Student alone was liable for its negligence in failing to give the substitute driver the route sheet, or to tell her D.J. was to be dropped off at the northwest corner of Goodfellow and Lalite, or even to tell her that D.J. lived on Lalite west of Goodfellow. The two verdict directors read:

Instruction No. 7

Your verdict must be for the Plaintiff [D.J.] and against Defendants [T.R.] and First Student, Inc. if you believe

First, Plaintiff [D.J.] was not dropped off at the northwest corner of Goodfellow and Lalite on October 24, 2019; and

Second, the southeast corner of Goodfellow and Lalite was not reasonably safe; and

Third, Defendants were thereby negligent; and

Fourth, such negligence directly caused or directly contributed to cause damage to Plaintiff [D.J.].

The term "negligent" or "negligence" as used in this instruction means the failure to use that degree of care that a very careful person would use under the same or similar circumstances.

6

Instruction No. 8

Your verdict must be for the Plaintiff [D.J.] and against Defendant First Student, Inc. if you believe:

First, either:

> First Student, Inc. did not provide [T.R.] with a copy of The Route Sheet on or prior to October 24, 2019; or

> First Student, Inc. did not tell [T.R.] that The Route Sheet stated "NW CRNR" next to "GOODFELLOW BLVD & LALITE AVE" on or prior to October 24, 2019; or

> First Student, Inc. did not tell [T.R.] that [D.J.'s] grandmother's house was located on Lalite Ave. west of Goodfellow on or prior to October 24, 2019; and;

Second, Defendant First Student, Inc. in any one or more of the respects submitted in paragraph First, was thereby negligent, and

Third, such negligence directly caused or directly contributed to cause damage to Plaintiff [D.J.].

The term "negligent" or "negligence" as used in this instruction means the failure to use that degree of care that a very careful person would use under the same or similar circumstances.

After deliberation, the jury returned unanimous verdicts in favor of T.R. and First Student and against D.J. on the theory set forth in Instruction No. 7, but in favor of D.J. and against First Student on the theory set forth in Instruction No. 8. First Student moved for judgment *non obstante verdicto* on the ground that the law and the evidence did not support the giving of Instruction No. 8.[1] This circuit court overruled this motion and entered judgment for D.J. First Student appeals.

---

[1] First Student's appeal concerns only whether Instruction No. 8 was supported by the law and evidence because, as the principal opinion points out, a party may move for JNOV only if it suffers an "adverse verdict." Slip op. at 3 (quoting *Rhoden v. Mo. Delta Med. Ctr.*, 621 S.W.3d 469, 476 (Mo. banc 2021)).

7

**Analysis**

First Student raises two claims on appeal. First, the circuit court should have entered judgment for First Student on the direct liability claim in Instruction No. 8 because First Student claims "the jury found [First Student] and [T.R.] dropped off [D.J.] at a reasonably safe place, which was the only legal duty owed by First Student in this case." Second, the circuit court should have entered judgment for First Student on the direct liability claim because First Student is not liable for the intervening criminal acts of a third party in that "it was not foreseeable that the hit-and-run driver would pass on the left side of a school bus that had its 8-way flashing amber lights activated and the stop arm extended and strike a passenger who was crossing the street in front of the bus." Both arguments are incorrect.

**Point One**

The principal opinion did not need to address First Student's first point because it agreed with the second. It is worth noting the obvious flaw in First Student's first argument, however, because it infects so many of First Student's arguments. First Student insists, in its first point relied on and many times throughout its brief, that the jury necessarily "found" First Student and T.R. dropped off D.J. at a reasonably safe location when it found for them on Instruction No. 7. This is plainly incorrect. The jury returned only general verdicts, with no specific findings on any issue. Accordingly, there is no way of knowing on which element or elements D.J. failed to persuade the jury.

Is it possible D.J. failed to persuade the jury that the southeast corner of Goodfellow and Lalite was not reasonably safe? Yes, but D.J. might just as well have

8

failed to persuade the jury that the substitute driver's actions were negligent. Instead, the jury might have believed the substitute driver did all that even a very careful person would do given that she did not know what the route sheet said, or that she was supposed to drop D.J. on the northwest corner of Goodfellow and Lalite, or that D.J. lived on Lalite west of Goodfellow, and therefore, it would be prudent to drop him off on the northwest corner. Finally, even if the jury was persuaded the southeast corner was not reasonably safe and the defendants were negligent in dropping D.J. there, D.J. might have failed to persuade the jury this negligence "directly caused or directly contributed to cause" his injuries because the jury might have believed the hit-and-run driver's actions were solely to blame. All these elements were necessary, and D.J. may have failed to convince the jury as to any one, two, or all three of them. We simply do not know why the jury was not persuaded to find for D.J. under Instruction No. 7, and First Student's repeated assertions otherwise do not change this fact. Because First Student's first point relied on is based entirely on this faulty premise, it should be denied.[2]

---

[2] By rejecting the point on this ground, the Court need not reach First Student's dubious assertion that it was under no duty to drop D.J. on the northwest corner of Goodfellow and Lalite despite it having undertaken to do so as part of its duty to D.J. and the evidence showing it planned the route sheet to keep from dropping D.J. at the southeast corner because it was not safe. *See Wolfmeyer v. Otis Elevator Co.*, 262 S.W.2d 18, 21 (Mo. 1953) (holding the "contract is of interest to us because it shows what defendant undertook to do … [a]nd in doing the things which the defendant knew or should have known [would affect] the safety of third persons, defendant had a duty to such third persons to do carefully what it undertook to do").

**Point Two**

First Student's second point relied on asserts that – even if it was negligent in failing to give the substitute driver the route sheet, the location of D.J.'s drop, or the location of D.J.'s home, and even if this negligence caused D.J.'s injuries – the actions of the northbound driver who was illegally attempting to pass the bus when he or she hit D.J. were an intervening cause insulating First Student from any liability for its actions. As a result, First Student contends the actions of the vehicle's driver, and not First Student, were the "proximate cause" of D.J.'s injuries.

**1. First Student's negligence proximately caused D.J.'s injuries**

Proximate cause analysis has bedeviled courts since its inception. First Student's argument adds another chapter to the mischief this doctrine creates and the overt policymaking it often obscures.

> "Proximate cause," in short, has been an extraordinarily changeable concept. Having no integrated meaning of its own, its chameleon quality permits it to be substituted for any one of the elements of a negligence case when decision on that element becomes difficult…. No other formula … so nearly does the work of Aladdin's lamp.

W. Prosser & W. Keeton, *Prosser and Keeton on the Law of Torts*, § 42 at 276 ("*Prosser and Keeton*") (5th ed. 1984) (alteration in original) (internal quotations and footnotes omitted).

Virtually every question of "proximate cause" can be framed – and perhaps better framed – in terms of what duty the defendant does (and does not) owe to the plaintiff. *Id*. at 274. Unlike "proximate cause," questions of duty are questions of law to be resolved solely by the court. *Id*. But, when a court declares no duty is owed even though (as

10

here) the defendant's conduct clearly was the but-for cause of the plaintiff's injuries, the court is making policy, i.e., whether a defendant in these circumstances ***should*** be liable. *Id*. (explaining "'duty' may serve to direct attention to the policy issues" and "is perhaps less likely than 'proximate cause' to be interpreted as if it were a policy-free factfinding"); *see also Gray v. Russell*, 853 S.W.2d 928, 930-31 (Mo. banc 1993) (noting "the rescue doctrine embodies a policy choice by courts to deem rescue attempts to be foreseeable for purposes of tort recovery"). Courts, however, are rightly uncomfortable engaging in such naked policymaking.

Similarly, virtually every question of "proximate cause" can be framed – and perhaps better framed – in terms of whether the defendant was not negligent, i.e., that the defendant did all a reasonable (or even very careful) person would do under the facts and circumstances. *Prosser and Keeton*, § 42 at 275 (explaining, in a proper case, it is better to say the defendant's "standard of reasonable conduct does not require the defendant to recognize the risk or take precautions against it" because, "[w]hen the courts say that his conduct is not 'the proximate cause' of the harm, they not only obscure the real issue, but suggest artificial distinctions of causation which have no sound basis"). And, again, unlike questions of proximate cause, the question of whether a defendant is not negligent as a matter of law is a question for the court. Like questions of duty, however, these decisions are openly and obviously based solely on policy, not law.

In the present case, First Student decided not to frame its argument in terms of duty or absence of negligence, but instead in terms of "proximate cause." The principal opinion accepts that framing. Posing the question as one of "proximate cause," rather

11

than duty or the standard of care, however, merely obscures that the Court is engaged in policymaking, it does not change it. Fortunately, First Student's choice to frame this case in terms of "proximate cause" presents a puzzle this Court solved long ago. Missouri wisely does not subject its jurors to the tortures of unsnarling the linguistic web of "but-for cause" or "cause-in-fact" on the one hand and "proximate cause" or "legal cause" on the other. Instead, our instructions merely ask the jury to decide whether the defendant's negligent actions "directly caused or directly contributed to cause" the plaintiff's injuries. *See* MAI 19.01 (8th ed.). Make no mistake, however, MAI 19.01 puts to the jury *both* questions of "cause-in-fact" *and* questions of "proximate cause." As the principal opinion properly notes, the phrase "directly resulted from" is synonymous with "proximate cause." Slip Op. at 6 (citing *State ex rel. Mo. Highway & Transp. Comm'n v. Dierker*, 961 S.W.2d 58, 60 (Mo. banc 1998)).

This Court has stated that negligence is the proximate cause of an injury (or the injury "directly results" from that negligence) when the injury is the "reasonable and probable consequence" of the defendant's act or omission. *Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC*, 587 S.W.3d 647, 657 (Mo. banc 2019) (internal quotation omitted). In other words, the question is whether the injury was within "the scope of *foreseeable* risk created by the defendant's act or omission." *Nail v. Husch Blackwell Sanders, LLP,* 436 S.W.3d 556, 563 (Mo. banc 2014) (emphasis added). "To the extent the [injuries] are surprising, unexpected, or freakish, they may not be the natural and probable consequences of a defendant's actions." *Dierker*, 961 S.W.2d at 61

12

(internal quotation omitted). The principal agrees with each of these statements and relies on them as the framework for deciding the case.

Having set the table so well, however, the principal opinion reaches the palpably incorrect answer. Was it foreseeable that, knowing the bus would approach the intersection of Goodfellow and Lalite from the south, First Student's failure to tell the substitute driver that D.J. was to be dropped off on the northwest corner of that intersection would result in him being dropped off on the southeast corner where he would have to cross in front of the bus, emerge from that blind spot to cross both lanes of Goodfellow, and thereby be exposed to the risk that he would be struck by a northbound vehicle passing along the left side of the bus? To ask the question is to answer it. The fact that D.J. was struck by a northbound vehicle passing the bus on the left was not a "surprising, unexpected, or freakish" result. The risk of that occurring was precisely *why* D.J. was to be dropped off on the northwest corner and not the southeast corner, i.e., to keep him out of the school bus's blind spots, to keep him from needing to cross Goodfellow, and to allow him to cross Lalite without being exposed to the risk of a driver passing on the left side of the bus.

The question of foreseeability becomes (or, at least, should become) much easier when the defendant actually foresees the risk of what happened. First Student foresaw the risk to D.J. if he was dropped off on the southeast corner and took steps to alleviate that risk; steps on which KIPP and D.J.'s family reasonably relied. First Student knew a child stepping out from in front of a bus is at risk of being struck by a vehicle passing the bus on the left side. The evidence shows First Student knew this because it is in First

13

Student's driver training manual. In addition, First Student knew the "area to the left of the bus is always considered ***dangerous because of passing cars***." (Emphasis added). The evidence shows First Student knew this because this quote comes from its own manual, together with an illustration with the left side of the bus labeled "***Danger From Passing Cars***." (Emphasis added). *See Prosser and Keeton*, § 44 at 303 ("If the intervening cause is one which in ordinary human experience is reasonably to be anticipated, or one which the ***defendant has reason to anticipate under the particular circumstances***, the defendant may be negligent … [for] failing to guard against it") (emphasis added) (footnotes omitted).

First Student seeks to obscure this plain and obvious answer by highlighting that the actions of the vehicle's driver in passing the bus on the left were illegal and pointing to premises liability cases in which this Court and others have noted that criminal acts of third parties are "rarely foreseeable." *See, e.g., Harner v. Mercy Hosp. Joplin*, 679 S.W.3d 480, 484 (Mo. banc 2023). The principal opinion should have rejected this bait but, instead, wound up swallowing it whole.

Premises liability cases such as *Harner*, and the very few negligence cases engaging in a similar analysis, concern claims that the defendant should have protected the plaintiff from the intentional and violent criminal acts of a third party. Here, the vehicle's driver was negligent – perhaps even reckless – but no one contends he or she intended to hit D.J. or acted with that purpose. As *Harner* makes clear, the question is one of foreseeability. A violent criminal attack is seldom foreseeable, but the risk that a vehicle might pass the bus in violation of traffic laws and strike a child emerging from

14

the blind spot in front of the bus to cross the street is not merely a foreseeable risk, it was exactly the risk First Student foresaw. *See Prosser and Keeton*, § 44 at 304 ("The risk created by the defendant may include the intervention of the foreseeable negligence of others."). It was the ***entire*** reason First Student undertook to design routes and drop-off lists that removed precisely this risk by dropping a child where such a crossing was not necessary. It was the ***entire*** reason First Student's route sheet had the bus drive well out of its way so it could approach Goodfellow/Lalite from the north and drop D.J. on the northwest corner so he would not have to walk in front of the bus and cross Goodfellow.

Even if it were not so clear that First Student should have foreseen – and, in fact, did foresee – that D.J. could be hit by a driver passing the bus on the left side, it cannot be doubted there was sufficient evidence to allow the jurors to decide proximate cause (along with cause-in-fact) as the question is normally put to them in MAI 19.01, i.e., whether First Student's acts or omissions "directly caused or directly contributed to cause" D.J.'s injuries. *See* MAI 19.01 (8th ed). The jury found they did, and there is no basis to reject that answer.

### 2. Proximate cause goes to the jury when reasonable people may disagree

Historically, the question of causation – both actual and proximate – has been a question for the jury. *See Prosser and Keeton*, § 45 at 320 ("The issue as to whether a described consequence was 'foreseeable,' or was 'directly' caused, and the issue as to whether an intervening force was 'abnormal' are to be decided as issues of fact are decided"). Over the decades, Missouri courts have specifically held this is so. *Cade v. Atchison, T. & S. F. Ry. Co.*, 265 S.W.2d 366, 269 (Mo. banc 1954); *Van Buskirk v. Mo.-*

15

*Kan.-Tex. R.R. Co.*, 349 S.W.2d 68, 72 (Mo. 1961); *Pollard v. Gen. Elevator Eng'g Co.*, 416 S.W.2d 90, 95 (Mo. 1967); *Champieux v. Miller*, 255 S.W.2d 794, 796 (Mo. 1953); *Cech v. Mallinckrodt Chem. Co.*, 20 S.W.2d 509, 514 (Mo. 1929); *Snyder v. Jensen*, 281 S.W.2d 802, 807 (Mo. 1955); *Dickerson v. St. Louis Pub. Serv. Co.*, 286 S.W.2d 820, 825 (Mo. banc 1956); *Welch v. Hesston Corp.*, 540 S.W.2d 127, 130 (Mo. App. 1976); *Reynolds v. Thompson*, 215 S.W.2d 452, 456 (Mo. 1948); *McCray v. Mo., K. & T. Ry. Co.*, 10 S.W.2d 936, 939 (Mo. 1928); *State ex rel. City of St. Charles v. Haid*, 28 S.W.2d 97, 100-01 (Mo. banc 1930); *Payne v. Chi. & A.R. Co.*, 31 S.W. 885, 888 (Mo. banc 1895); *Stollhans v. City of St. Louis*, 121 S.W.2d 808, 810 (Mo. 1938); *German v. Kan. City*, 512 S.W.2d 135, 147 (Mo. banc 1974).

None of these cases has been overruled by this Court on this ground, and they remain good law. True, after the adoption of MAI 19.01, this Court rarely needed to draw a distinction between proximate cause and actual cause in terms of what questions go to the jury because this MAI incorporates both concepts. It simply asks the jury whether the defendant's conduct "directly caused or directly contributed to cause" the plaintiff's injuries. *See* MAI 19.01 (8th ed). But, even after MAI 19.01, this Court has continued to note that questions of proximate cause should almost always be left to the jury using the "directly caused or directly contributed to cause" formulation. *See Johnson v. Bi-State Dev. Agency*, 793 S.W.2d 864, 868 (Mo. banc 1990); *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 762 (Mo. banc 2011).

Lower courts have occasionally mistaken MAI 19.01 to mean the question of proximate cause can never go to the jury and must always and only be decided by the

16

court.  *See Poage v. Crane Co.,* 523 S.W.3d 496, 513 (Mo. App. 2017); *Wagner v. Bondex Int'l, Inc.*, 368 S.W.3d 340, 351 (Mo. App. 2012); *Payne v. City of St. Joseph*, 135 S.W.3d 444, 450 (Mo. App. 2004).  These cases are simply wrong, however, and ignore the long line of precedent from this Court to the contrary.  As explained above, the language of MAI 19.01 includes both the concept of "but-for cause" and the concept of "proximate cause."

But to say – as this Court *always* has – that the question of proximate cause is one for the jury (and is now subsumed in the "directly caused or directly contributed to cause" formulation) is not to say that the circuit court cannot play its usual gatekeeping role in gauging submissibility.  When there is insufficient evidence from which a reasonable juror could find the defendant's acts or omissions "directly caused or directly contributed to cause" plaintiff's injuries, the circuit court should direct a verdict for the defendant (or grant the defendant's JNOV motion).  *See Prosser and Keeton*, § 45 at 320 (explaining proximate cause issues of "foreseeability" and "direct" causation are "decided by a jury to the same extent, no more and no less, as [other, less evaluative] fact questions" such that, "if reasonable persons could not differ about the determination on the evidence before the court, it is decided by the trial judge").  And, in such a case, it might well be proper to say that proximate cause is lacking as a matter of law.

That said, however, I do not understand the principal opinion to hold that no reasonable juror could find First Student's acts and omissions "directly caused or directly contributed to cause" D.J.'s injuries.  That would not even be colorable.  Instead, it holds that the Court is making – and only courts may make – that decision.  It holds that only

17

courts may decide what is a "natural and probable" consequence of the defendant's actions on the one hand or a "surprising, unexpected, or freakish" result on the other. In doing so, it compounds the error in *Poage,* et al., and ignores this Court's unbroken line of cases holding proximate cause is a question for the jury so long as (like any other element) the evidence is such that reasonable people may disagree.

## Conclusion

For the foregoing reasons, I respectfully dissent. It may very well be that this Court believes First Student should not be liable under these circumstances. That is policymaking, however, not law, and it should be left to the legislature. The legislature already regulates school bus operations to a great extent and it is in a better position than this Court to decide whether and how to limit liability when a bus operator complies with those regulations.

_____
Paul C. Wilson, Judge